EMIL LICHT, Appellant, v. FERD EHLERS et al., Appellees.

No. 46453.

APRIL 4, 1944.

REHEARING DENIED SEPTEMBER 23, 1944.

E. C. Halbach, of Clinton, for appellant.

Miller, Miller & Cousins, of Clinton, and Reid L. Hunt, of Tipton, for appellees.

MULRONEY, J.—By admissions in the pleadings it was established that the plaintiff was the owner of certain farm land situated upon the line between Cedar and Clinton counties and that in the year 1926 a public highway was established on this line. It was conceded that William Licht was plaintiff's predecessor in title and the owner of the land at the time the road was established, and in the building of the highway a cattle pass of plank was constructed underneath the highway for use by William Licht. It was also acknowledged that the defendants, the county engineers and supervisors of the two counties, threatened to close the cattle pass, which had been used for sixteen years and was now in a state of disrepair, by filling the same with dirt. The prayer was for an injunction to restrain the defendants from closing the cattle pass and a peremptory order directing the defendants to repair same. The trial court found that "no agreement was entered into between the Counties or either of them and William Licht for the repair or maintenance of the cattle pass," and a decree dismissing the petition was entered. The parties state the question to be decided is whether the landowner or the counties must bear the cost of repairing the cattle pass. If the landowner must repair the cattle pass at his expense, and he does not do so, then, the defendants argue that, in the performance of their duty to maintain a safe highway, they can fill it up. On the other hand, if the defendants must maintain the cattle pass in a state of repair, plaintiff argues injunction will lie against the threatened closing and the peremptory order for the defendants to repair it should issue.

I. The records of board proceedings and claims at the time the road was established do not clearly show what the

landowner and the counties agreed to with regard to the maintenance of the cattle pass. In fact, the records in Cedar county do not show any proceedings with regard to the establishment of the highway. But the testimony fairly shows that this was a county-line road, probably established under section 4594, Code of 1924, by the concurrent action of the boards of supervisors of the two counties. Supervisors for each county at the time of the establishment of the road testified that it was a joint proposition and that the boards had joint meetings. The Clinton county board and engineer took the active part in the work of establishing the road and handling claims. The Clinton county supervisor at the time testified:

"Well, we made a deal with them that we put the road in and they [Cedar County] to pay for half of it. * * * we didn't get the road in right away; we paid for it right away; Cedar County paid later."

This was more or less corroborated by the Cedar county board member in 1926, who testified that it was his understanding that " * * * it was a joint proposition between the two Counties" and the boards had a "joint meeting." He also stated that the Clinton county engineer took the lead in handling the construction and he understood both counties were supposed to pay a half share of the damages.

The Clinton county records showed the filed claim of W. A. (William) Licht for damages in the sum of $1,650, based upon a taking of five acres of his land at $250 an acre and the construction of four hundred rods of fence at $1 a rod. But it was provided in the claim that the claim for the above damages be made subject to the following:

" * * * that the County of Clinton establish, maintain and repair an underground cattle-way in said highway * * *."

This claim was filed in February 1926, and the board proceedings of Clinton county on November 22, 1926, discloses a resolution wherein damage claims are allowed to various claimants, including William Licht in the sum of $763.60, and the resolution contains the following closing sentence:

"It is further agreed by the Board of Supervisors to put in an under crossing of plank to be used by Wm. Licht."

In their answer, the defendants Clinton county supervisors and engineer admit the payment to William Licht in the sum of $763.60 and (in the first paragraph of Paragraph VII of the petition):

"That said moneys were paid and said undercrossing was established in consideration of the grant to the said Board of Supervisors to establish said road and the said William Licht and his successors in interest in title to said real estate, hereinbefore described, and including this plaintiff have used said undercrossing and the cattle pass * * * openly, notoriously, adversely and with knowledge to all parties concerned, for a period of more than 16 years * * *."

Plaintiff's sole witness, Mr. Mowry, a member of the Clinton county board of supervisors from January 1, 1925, to January 1, 1931, testified that he was the instigator of the road and represented Clinton county in various conferences with members of the Cedar county board and the Cedar county engineer. He told of one conference with William Licht when the Clinton county engineer and a supervisor from Cedar county were present, where:

"Mr. Licht said he would have to have an underground crossing and I said we would allow him damages and I think you will find he was allowed damages for the underground bridge; Mr. Lorenzen [the Clinton County Engineer] said, 'We are pretty short on money,' and we made a deal with Bill [William Licht] to put in a piling bridge, and he said, 'The next bridge that we put in can be a permanent bridge.' "

He testified that Lorenzen suggested the "piling bridge" that would last twelve or fifteen years, and Lorenzen said to William Licht:

"After that goes out we can put a cement bridge in * * * We are short of money * * * It will be graveled some day more than likely and we can put a good bridge in when the gravel is done."

Mowry testified that:

"Mr. Licht said after the bridge was put in the County would have to keep it up and put a different bridge in when it went out; we agreed to it * * *."

The defendants' evidence on the issue of maintenance of the cattle pass consisted of the testimony of R. A. Hershire, who was assistant engineer under Lorenzen at the time the road with the cattle pass was constructed. He testified that in the course of the road-establishment proceedings he conferred with William Licht. He told Licht that the board had allowed his damage in the sum of $763.60 but the board would build a permanent bridge "if he would pass the payment of that money," but Licht said he would take the money and the wooden cattle pass. When Licht inquired how long the wooden pass would last, Hershire told him twelve or fifteen years and Licht then said that was as long as he was interested in it. Hershire also testified a permanent steel-and-concrete pass could be built at that time for $2,500 and a permanent concrete pass for $1,239. He stated somewhat smaller ones could be built for $717 and $780, while the estimate figure for the wood pass was $475.

We agree with the trial court that there was no great conflict in the evidence on the question of who was to maintain the cattle pass. Plaintiff's witness stated rather clearly that this was to be the counties' obligation. Defendants' witnesses did not directly contradict this. William Licht's filed claim was subject to the establishment and maintenance of the cattle pass by the counties. In the board resolution expressly allowing the claim, Clinton county agreed to "put in" the under crossing of plank. By admission in pleadings the Clinton county board admitted that the claim for damages was paid in the amount of $763.60 and the under crossing was established in consideration of the grant to the board of the land to establish the road. We have no difficulty, under this record, in arriving at the conclusion that the obligation to repair and maintain the cattle pass was upon the counties. The trial court saw a conflict in the testimony of Mowry and the written record of the claim and resolution. It resolved the doubt in favor of the written record

of the resolution, which was silent on the question of who, was to bear the burden of repairing the cattle pass.

A study of our holdings in the three cases of Agne v. Seitsinger, 85 Iowa 305, 52 N. W. 228; 96 Iowa 181, 64 N. W. 836; 104 Iowa 482, 73 N. W. 1048; and Bartels v. Woodbury County, 174 Iowa 82, 156 N. W. 303, clearly indicates plaintiff's right to the relief prayed for. There, in strikingly analogous cases, we decided similar controversies in favor of the landowner. In the Agne cases it appeared that Agne's predecessor in title signed an instrument agreeing to donate ground for the purpose of establishing a public highway, "* * * on the express condition, viz. that said owner reserve the right to attach a fence to the bridge which must necessarily be built across Rock run before said road can be made passable * * *." The bridge was constructed and maintained by the county from 1858 to 1890 and the landowner attached his fences to the bridge and used the passageway underneath for a cattle pass. When the bridge was washed out, the county road supervisor replaced it in such a manner as to deprive the landowner of the cattle pass. The action was for damages by the landowner against the road supervisor—the plaintiff contending his right to the cattle pass was one of the incidents of the reservation in the grant and if this be not true then he "holds the same by a prescriptive right" by reason of thirty years' use. We held in Agne v. Seitsinger, 96 Iowa 181, 186, 64 N. W. 836, 838, that:

" * * * it is the intent of the parties which should govern, where such intent can be determined by parol evidence without doing violence to some of the settled rules with reference to written instruments."

And, after reviewing the evidence showing that the land on both sides of the bridge was used at and since the time of construction for pasturage, we held, " * * * that the reservation covers the cattle pass." There, too, it was contended "* * * that the county did not agree on its part to maintain said bridge * * * ," but in the first appeal from the order sustaining the demurrer we pointed to the allegation in the petition that the "county did in fact accept the grant with the conditions," and concluded "that the county could not, after so doing, erect

another bridge, not at all conforming to the terms and conditions of the grant * * *.'' Agne v. Seitsinger, 85 Iowa 305, 312, 52 N. W. 228, 230.

Although the Agne case involved a grant or dedication and the action was at law for damages, the propositions involved are similar. In the later case of Bartels v. Woodbury County, supra, 174 Iowa 82, 88, 156 N. W. 303, 305, which was an injunction action against the threatened filling of a cattle pass under a highway, we held against the county's contention that the easement was terminated when the old bridge was replaced, and there stated:

''But this point was determined against such contention in the case of Agne v. Seitsinger, 85 Iowa 305, above cited, which case was four times before this court * * *.''

The controversy in the Bartels case was similar to the one here. There, in the road-establishment proceedings, the landowner appealed to the district court from the amount of damages allowed by the board of supervisors. His appeal was settled when the board agreed to pay him $550 and build a runway for stock under a bridge. The board resolution settling the case provided for the building of the bridge in a manner to provide for the runway, but, like the board resolution here, it was silent on repairs or the continued maintenance of the stock passageway. A piling bridge was first constructed giving the landowner the cattle pass at the end. When the county proposed to fill the cattle pass with dirt and replace the wooden bridge with a concrete culvert, we held the landowner was entitled to the injunction.

The same reasoning expressed in the Agne and Bartels cases leads us to the holding that the plaintiff is entitled to the relief prayed for here. Similar fact situations produce similar legal conclusions. The board resolution shows the establishment of the easement agreed upon. The easement was for an under crossing for plaintiff's grantor. True, it stated the under crossing was to be of plank, but that did not mean that plaintiff was to have an easement so long as the plank remained firm and solid. The point is that the counties accepted the road and agreed to pay damages and agreed to put in the cattle pass for

the landowner's use. In other words, the counties established a road that left the landowner with a passageway for his cattle. Perhaps the counties can now take the passageway, but they can do it only in condemnation proceedings that will compensate the landowner. The record indicates the repairs are made necessary by reason of the use of the roof of the cattle pass as a road. When the counties established the cattle pass they, of course, impliedly agreed to do nothing to destroy it. They cannot now, without compensating the landowner, repair the road in a manner that will take away that for which they have not paid. We do not need to find any express agreement to repair the cattle pass in this action. It is enough that the agreement to establish and erect the cattle pass is present and this agreement was performed by the counties in at least partial settlement for the taking of the landowner's property.

The Clinton county board admits that the damage money was paid and the under crossing was established *in consideration* of the grant of land for the road. The under crossing is a valuable property right. If it is now to be taken from the landowner, it must be by proceedings that will compensate him. We hold that the injunction against the threatened destruction of the cattle pass by the defendants should issue.

Plaintiff's brief and argument states:

"It must be borne in mind, that as far as the appellant is concerned, there is no need of repair for his use of said bridge or cattle pass, but the need for repair or reconstruction arises by virtue of a need of repair to support the travel over the bridge by the public."

Because plaintiff concedes that no need of repair exists as to his use of the cattle pass, the prayer for the peremptory order that defendants repair the cattle pass will be denied. It will be presumed the defendants will perform their duty with respect to maintaining a safe highway. The case is reversed and remanded for decree in harmony with this opinion.—Reversed and remanded.

All Justices concur.