**John and Nedra GUZMAN, Appellees,**

v.

**DES MOINES HOTEL PARTNERS, LIMITED PARTNERSHIP, Appellant.**

No. 90–1862.

Supreme Court of Iowa.

July 22, 1992.

David L. Phipps of Whitfield, Musgrave & Eddy, Des Moines, for appellant.

Michael F. Lacey, Jr., Michael D. Huppert, and Ronald M. Rankin of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, Des Moines, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, SCHULTZ, and ANDREASEN, JJ.

LARSON, Justice.

Des Moines Hotel Partners appeals from a judgment for damages caused by a malfunctioning lawn sprinkler and the resulting collision involving the plaintiffs' car. We modify and affirm.

Des Moines Hotel Partners owns the Hampton Inn Motel on Fleur Drive in Des Moines. An underground sprinkler system on the property was designed to water the lawn in rotating sections at preset times. One of the sprinklers along the east edge of Fleur Drive was set to turn on at approximately 5:30 or 6:00 a.m. on the date of this accident. At the time of the accident, approximately 7:00 a.m., witnesses noticed

that the sprinkler was spraying water out onto the traveled portion of the street.

John and Nedra Guzman, traveling on Fleur Drive, struck a car that had stopped because of an earlier accident at the site. Guzman claimed the accident was the result of his inability to stop in time because the water from the defendant's sprinkler obscured his vision.

A maintenance man for the defendant hotel testified that he had observed the sprinkler the day before the accident, and it was operating properly. After the accident, he noticed that the sprinkler head was bent and appeared to have been run over. Another witness, a repairman, testified that in his opinion the sprinkler head had simply malfunctioned and locked into the wrong position.

Guzmans sued the defendant hotel on theories of negligence and nuisance. Following trial, the jury returned its verdict and answers to special interrogatories, finding the defendant guilty of negligence and of maintaining a nuisance. The jury assessed damages for the Guzmans and apportioned fault of fifty-five percent to the defendant and forty-five percent to plaintiff John Guzman. Judgment was entered for the Guzmans for the full amount of their damages without reduction for the amount of fault attributed to John Guzman.

On appeal, the defendants raise ten issues and several subissues directed to the court's submission of negligence and nuisance theories, rulings on evidence, and its computation of interest. The plaintiffs raise an issue on cross-appeal regarding interest on the judgment. We will combine several of the issues in disposing of the appeal.

## I. *The Negligence Issue.*

 The defendant claims it owed no duty of care to travelers on the city street and that it could not be found guilty of negligence in the absence of evidence that it either had prior notice of the malfunction of the sprinkler or that the defendant had actually caused the malfunction.

We reject the argument that the defendant owed no duty to persons using the public street. As we said in *Weber v. Madison,* 251 N.W.2d 523, 527 (Iowa 1977),

> [w]hile an abutting landowner is not liable with respect to highway hazards over which he has no control, he is under an obligation to use reasonable care to keep his premises in such condition as to not create hazards in the adjoining highway. He must conduct operations on his land in such a manner as to not injure the highway traveler. He may be subject to liability for physical harm caused by an excavation or other artificial condition on his land which is so near an existing highway that he realizes or should realize it involves an unreasonable risk to highway travelers using reasonable care.

(Citations omitted.)

In ruling on a directed verdict motion or motion for judgment notwithstanding the verdict, we view the evidence in the light most favorable to the party against whom the motions were made. *Slocum v. Hammond,* 346 N.W.2d 485, 493–94 (Iowa 1984); Iowa R.App.P. 14(f)(2).

When the evidence is so viewed, we believe it is sufficient to support a finding that the defendant was negligent. If, as the evidence suggests, the sprinkler was damaged by a vehicle, this is something that could reasonably have been anticipated in view of the close proximity of the sprinkler to the street. There is even evidence that the defendant's own employees had seen sprinklers on earlier occasions malfunctioning and spraying water onto Fleur Drive. In addition, the sprinkler was programmed to start before the defendant's maintenance man was on the job, and the controls that could have stopped the flow of water were located in a locked shed, inaccessible to anybody else.

We conclude that the court did not err in submitting the theory of negligence.

## II. *The Nuisance Issue.*

 Iowa Code section 657.1 (1989) provides:

Whatever is injurious to health, indecent, or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or ·property, is a nuisance, and a civil action by ordinary proceedings may be brought to enjoin and abate the same and to recover damages sustained on account thereof.

Section 657.2 lists nuisances, which include certain uses of buildings; the accumulation of "offal, filth, or noisome substance" as well as any other "unwholesome or impure" corruption of streams; the encumbrance of public roads and rights-of-way; and the operation of houses of ill-fame and similar conditions.

As we have noted, however, these statutory provisions have not superseded the common law of nuisance. *See, e.g., Bates v. Quality Ready–Mix Co.*, 261 Iowa 696, 703, 154 N.W.2d 852, 857 (1968). As to common-law nuisance, one writer has noted,

> [t]here is perhaps no more impenetrable jungle in the entire law than that which surrounds the word "nuisance." It has meant all things to all people, and has been applied indiscriminately to everything from an alarming advertisement to a cockroach baked in a pie. There is general agreement that it is incapable of any exact or comprehensive definition. Few terms have afforded so excellent an illustration of the familiar tendency of the courts to seize upon a catchword as a substitute for any analysis of a problem; the defendant's interference with the plaintiff's interests is characterized as a "nuisance," and there is nothing more to be said.

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 86, at 616–17 (5th ed. 1984) [hereinafter *Prosser and Keeton* ].

■ A similar observation was made in *Awad v. McColgan*, 357 Mich. 386, 388–90, 98 N.W.2d 571, 573 (1959). In that case, a tenant was injured on a defective porch and sued the owner on the theory of nuisance. The Michigan court observed that "[n]uisance is the great grab bag, the dustbin, of

the law" and that the whole idea of nuisance "is a good question to bake a question with." *Id.* at 389, 98 N.W.2d at 573. As the court in *Awad* noted, nuisance "is so comprehensive a term, and its content is so heterogeneous that it scarcely does more than state a legal conclusion that for one or another of widely varying reasons the thing stigmatized as a nuisance violates the rights of others." *Id.* (quoting Thayer, *Public Wrong and Private Action*, 27 Harv.L.Rev. 317, 326 (1913)). Much of the vagueness and uncertainty surrounding the concept of nuisance is due to the fact that the word itself does not identify the *cause* of a problem but simply means the hurt, annoyance, or inconvenience that results from it. *Prosser and Keeton*, at 617.

■ There are public nuisances, and there are private nuisances. A public or common nuisance is a species of catchall criminal offenses, consisting of an interference with the rights of a community at large. This may include anything from the obstruction of a highway to a public gaming house or indecent exposures. *Prosser and Keeton*, at 618. A private nuisance, on the other hand, is a civil wrong based on a disturbance of rights in land. *Id.*

> As this authority notes,
> [i]f "nuisance" is to have any meaning at all, it is necessary to dismiss a considerable number of cases which have applied the term to matters not connected either with land or with any public right as mere aberration, adding to the vagueness of an already uncertain word. Unless the facts can be brought within one of the two categories mentioned, there is not, with any accurate use of the term, a nuisance.

*Prosser and Keeton*, at 618–19.

The essence of a private nuisance is an interference with the use and enjoyment of land. Examples include vibrations, blasting, destruction of crops, flooding, pollution, and disturbance of the comfort of the plaintiff, as by unpleasant odors, smoke, or dust. *Id.* at 619.

One of the most frequent examples of a public nuisance is the obstruction on a pub-

lic highway or sidewalk. *Prosser and Keeton*, at 651. However, as this authority notes,

> [s]ome obstruction to the highway or sidewalk may have been accidental, as when a wall collapses or a tree falls, in which event it is highly unlikely that the defendant should ever be liable for "injury" resulting therefrom unless the injury is the kind that is generally protected through the rules pertaining to negligence. The fact that this accidental intrusion resulted in an obstruction of a public highway is no more significant than if the intrusion resulted in the obstruction of a private alley or road.

*Id.*

Analysis of the authorities dealing with the area of nuisance establish that nuisance itself simply refers to the result. Negligence, as here, might be the cause. In those cases, the concepts of negligence and nuisance are interrelated, referred to by one court as "negligence-nuisance" cases. *Awad*, 357 Mich. at 390, 98 N.W.2d at 574.

■ Our court has discussed the interrelationship of negligence and nuisance. In *Hall v. Town of Keota*, 248 Iowa 131, 79 N.W.2d 784 (1956), the plaintiff's decedent was struck by the falling of a sign belonging to the city. We noted that

> the traffic sign was directly connected with the intended use of the street. It was a means of regulating travel upon it.... It was a part of the street and sidewalk and should have been kept in repair. But we think failure to do so did not amount to maintenance of a nuisance. It is often difficult to distinguish negligence and nuisance. Each arises from a failure to perform a duty owed.

> We think the true distinction so far as our present situation is concerned is pointed out by [a Missouri case in which] it is said: "That to constitute a nuisance 'there must be a degree of danger (likely to result in damage) inherent in the thing itself, beyond that arising from mere failure to exercise ordinary care in its use'." The cited case involved an action for the wrongful death of plaintiff's husband

while confined in the city jail when it burned. It was held the jail was a lawful structure and the failure to maintain it properly and free from danger of fire was at most negligence rather than a nuisance. The parallel with the situation in the instant case is exact. The traffic post was a lawful structure lawfully on the sidewalk. Failure to maintain it in a safe condition, if there was such a failure, was no more than negligence; it was not a nuisance.

*Id.* at 142, 79 N.W.2d at 790.

We conclude that the court erred in submitting the issue of nuisance as a separate theory. As the above authorities note, nuisance is merely a condition created by this defendant, if at all, through negligence. As an academic matter, it perhaps makes little difference whether an action is called a nuisance action or one based on negligence. However, as the defendant points out, the nature of the action makes considerable practical difference on the issue of apportionment of fault under chapter 668. We discuss that issue in the following division.

### III. *Apportionment of Damages.*

■ In nuisance cases based on negligence, contributory negligence has been held to be a defense. *See Warren v. City of Bridgeport*, 129 Conn. 355, 359, 360, 28 A.2d 1, 3, 4 (1942); *Awad*, 357 Mich. at 390, 98 N.W.2d at 574 (nuisance based on negligence "partakes of the essentials of a negligence action, including such defenses as contributory negligence").

The apportionment of fault under Iowa Code section 668.2 merely supplants our prior law of contributory negligence and permits reduction of a plaintiff's recovery according to the amount of fault attributed to the plaintiff. *See Schwennen v. Abell*, 430 N.W.2d 98, 100–101 (Iowa 1988). This case, although denominated as a nuisance action, is based on negligence. The fault of the plaintiff-driver, assessed by the jury at forty-five percent, should have been taken into account in the final award of damages.

IV. *Evidence Issues.*

Several issues regarding the trial court's ruling on evidence have been raised, and we will discuss them briefly.

■ A. The defendant claims it was error for the trial court to sustain the plaintiffs' motion in limine prohibiting the defendant from introducing evidence that another party, Turf Services, Inc., had been dismissed. Under Iowa Code section 668.-3(2)(b), the fault of "each claimant, defendant, third-party defendant, and person who has been released from liability under section 668.7" is to be allocated. Section 668.7 provides:

> A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount of the released person's equitable share of the obligation, as determined in section 668.3, subsection 4.

In this case, the dismissal of Turf Services, Inc. was not made pursuant to a release or covenant not to sue. The dismissal was made without prejudice. Under sections 668.2 and 668.7, it was not error for the court to refuse to allow evidence that Turf Services, Inc. had been dismissed. Of course, the defendant was still free to show what part, if any, Turf Services, Inc. played in causing the accident.

■ B. The plaintiffs' economic expert calculated John Guzman's lost earnings and included interest in his final computation. The court instructed the jury that it could consider interest on Guzman's lost earnings, and the defendant complains that this amounted to allowing interest on interest. We do not agree; the court instructed that the jury could allow recovery for lost earnings and interest on the earnings, but its instructions could not reasonably be construed to allow interest on the interest. We reject this complaint.

C. The trial court submitted the defense of sudden emergency, and the defendant argues that this was error. We believe under the facts of this case the court did not abuse its discretion in submitting sudden emergency. Moreover, it appears that it was not prejudicial to the defendant because the jury found Guzman forty-five percent at fault and apparently did not accept sudden emergency as an excuse for failing to follow the rules of the road.

■ D. The court allowed the plaintiff to read to the jury portions of Iowa Code sections 321.369 and 321.370, which prohibit the deposit on highways of certain "debris" and "injurious material." The defendant argues that city water cannot be considered such substances and that exposure of the statutes to the jury could only confuse it.

We agree that these sections have no bearing on the subject matter of this suit, but find no prejudice. The court's instructions did not permit the jury to consider the violation of these statutes as a basis of liability.

E. The defendant also contends it was error to admit portions of Guzman's doctors' reports; however, we believe that, in view of our liberal rules in admission of medical reports, the court did not commit error in this regard.

V. *Failure to Enter Judgment on Original Verdict.*

■ When the jury first reported it had reached a verdict, the court examined it and discovered that it was inconsistent. The jury found that the defendant was negligent and had maintained a nuisance, and it set damages for the plaintiffs. But it found no proximate cause. The court resubmitted the matter to the jury, which then found proximate cause. The defendant argues that it was error to refuse to enter judgment on the original verdict. We believe the trial court was within its discretion in resubmitting the issue, in view of the fact that the first verdict form obviously was the result of confusion on the part of the jury. *See Reilly v. Straub,* 282

N.W.2d 688, 696 (Iowa 1979); Iowa R.Civ.P. 206.

## VI. *Disposition.*

While it was error to instruct the jury on the plaintiffs' nuisance theory, it is not necessary to remand for a new trial. The jury allocated fault, found proximate cause, and set the plaintiffs' damages. We therefore affirm the judgment for the plaintiffs, but remand with instructions to the district court to vacate the original judgment and enter judgment for John Guzman for the amount of damages found by the jury as adjusted for the forty-five percent of fault attributed to him. Judgment should be entered for Nedra Guzman in the amount set by the jury, without reduction.

Interest should be added to these amounts. The plaintiffs contend that judgment should be entered from the date of the filing of the action pursuant to Iowa Code section 535.3. As we have concluded, however, this case is subject to apportionment of fault under Iowa Code chapter 668 and, pursuant to section 668.13(3), a different method of computing interest is required. Therefore, interest on John Guzman's damages preceding the date of the judgment should be computed from the date of filing of the petition, and all damages following the judgment should draw interest from the date of the judgment pursuant to section 668.13(3). The jury did not determine which of Nedra's damages were past and which were future. We assume that, for computing interest, her damages should all be considered to be future only and should draw interest only from the date of the judgment. We affirm and remand for modification of the judgment in accordance with this opinion.

AFFIRMED AS MODIFIED AND REMANDED.