# IN THE COURT OF APPEALS OF IOWA

No. 19-1980
Filed August 4, 2021

TRACEY K. KUEHL, LISA K. KUEHL, PAMELA J. JONES and HALEY A. ANDERSON,
     Plaintiffs-Appellees.

vs.

PAMELA SELLNER, TOM SELLNER, CRICKET HOLLOW ZOO, INC. AND PAMELA J. SELLNER TOM J. SELLNER, AN IOWA GENERAL PARTNERSHIP, D/B/A CRICKET HOLLOW ZOO,
     Defendants-Appellants.
_____

Appeal from the Iowa District Court for Delaware County, Monica Zrinyi Wittig, Judge.

Pamela Sellner, Tom Sellner, Cricket Hollow Zoo, Inc. and Pamela J. Sellner Tom J. Sellner, an Iowa General Partnership, D/B/A Cricket Hollow Zoo appeal the district court's declaratory judgment and order of injunction. **AFFIRMED.**

Larry J. Thorson of Ackley, Kopecky & Kingery, L.L.P., Cedar Rapids, for appellants.

Kristy Dahl Rogers, Olivia N. Norwood, Brandon R. Underwood and Bridget R. Penick of Fredrikson & Byron, P.A., Des Moines, and Jessica L. Blome (*pro hac vice*) of Greenfire Law, P.C., Berkeley, California, and Amanda Howell (*pro hac vice*) of Animal Legal Defense Fund, Cotati, California, for appellees.

Heard by Vaitheswaran, P.J., Schumacher, J. and Gamble, S.J.*

*Senior judge assiged by order pursuant to Iowa Code section 602.9206 (2021).

**VAITHESWARAN, Presiding Judge.**

Pamela and Tom Sellner maintained Cricket Hollow Zoo on their property in Manchester, Iowa. Decades ago Pam Sellner began acquiring what she termed "exotic animals," beginning with, in her words, "the world's ugliest llama." A cougar, a lion, and numerous other animals followed. The United States Department of Agriculture issued her an exhibitor's license in approximately 2002 and periodically inspected the premises.

Tracey Kuehl, Lisa Kuehl, Pamela Jones, and Haley Anderson visited the zoo one or more times. They sued the Sellners and their zoo alleging they violated what they characterized as Iowa's animal neglect law, Iowa Code sections 717B.3(1)(a) through (c) (2018). They also alleged the zoo was a public nuisance. They sought a declaratory judgment and an injunction prohibiting the Sellners from "confining animals in inhumane and unsafe conditions" and "obtaining other wild or exotic animals." They also sought to divest the Sellners of their "ownership and possessory rights" in the animals and requested "an order for the seizure of" the animals. Following a site visit and trial, the district court granted the requested relief.

On appeal, the Sellners contend the district court (1) impermissibly allowed the visitors to proceed with a private cause of action under Iowa Code chapter 717B; (2) erred in finding the Sellners' conduct constituted a public nuisance; (3) impermissibly acted as an advocate for the visitors; and (4) abused its discretion in declining to sanction the visitors for violation of a discovery order. The visitors respond that the appeal is moot. We will begin with the "threshold" mootness argument. *See Homan v. Branstad*, 887 N.W.2d 153, 163 (Iowa 2016).

## I. Mootness

"[A] court will generally decline to hear a case when, because of changed circumstances, the court's decision will no longer matter." *Homan v. Branstad*, 864 N.W.2d 321, 328 (Iowa 2015). "This is known as the doctrine of mootness." *Id.*

The visitors base their mootness argument on a decision issued five months after notice of appeal was filed in this case. They ask us to take "judicial notice" of the decision. We need not rely on judicial notice principles because "[m]atters that are technically outside the record may be submitted in order to establish or counter a claim of mootness." *In re L.H.*, 480 N.W.2d 43, 45 (Iowa 1992).

The visitors assert "any decision reversing the judgment appealed from would have no practical force or effect, as [the Sellners] agreed to permanently refrain from exhibiting wild animals at the zoo by Consent Decision with the United States Department of Agriculture" (USDA). The consent decision arose in connection with a USDA complaint alleging the Sellners willfully violated federal regulations implementing the federal Animal Welfare Act. The Sellners agreed they held an Animal Welfare Act license to "operate[ ] a zoo exhibiting wild and exotic animals." They further agreed to "cease and desist from violating the Act and the Regulations and Standards" and to revocation of their license. Finally, they agreed they would "not apply for any other Animal Welfare Act license hereafter."

The relief in this state-court action was broader. The court enjoined the Sellners "from ownership of exotic animals or wildlife" and "divested [them] of all ownership interests in the exotic animals and wildlife currently in their possession and or listed on the inventory of animals provided by the" USDA. The court also

ordered the animals "removed immediately" and ordered the visitors or their agents to make "all arrangements for th[eir] removal."

Following issuance of the order, both sides disagreed on its scope. The visitors contended that certain breeds identified as farm animals were in fact "exotic" animals subject to removal.[1] The Sellners countered that many of the animals were "farm animals" integral to their livestock operation or were creatures such as chickens endemic to Iowa farms. The court held two emergency hearings to clarify its original order.[2] In the first clarifying order, the court ruled "all animals considered to be exotic animals, all animals covered under the Animal Welfare Act, and all animals identified on the USDA inventory of zoo animals (identified as Exhibit 29) are to be removed from the property."[3] The court went on to identify particular types of animals included and excluded from the original directive. The court filed another order identifying certain cattle not subject to the removal order and ordering cows previously removed from the property to "be returned." Absent from the record is a list of removed animals with identifiers for each or their new locations.

The Sellners now ask this court to "overturn the decision of the Trial Court granting an injunction against [them] and providing for seizure of [their] animals"

---

[1] For example, the parties engaged in a lengthy discussion about llamas and whether they were farm animals or exotic animals.

[2] Although these hearings took place after the Sellners filed their notice of appeal, they will be considered on the mootness issue. *See L.H.,* 480 N.W. 2d at 45 ("We consider matters that have transpired during the appeal for this limited purpose.").

[3] The USDA inventory referenced by the court was both over-inclusive and under-inclusive. For example, it included a dog, which the visitors appeared to concede was a family pet, as well as "cow or ox," which the district court stated was part of the Sellners' livestock operation. At the same time, the inventory failed to list the number of "exotic" animals on the property.

and enter judgment "in [their] favor."[4]   Assuming we were to reverse the district court judgment and enter judgment in favor of the Sellners, there would be no way to return the Sellners to the status quo because we cannot identify any "farm animals" that were removed and not returned.[5]  *See Welton v. Iowa State Highway Comm'n*, 277 N.W. 332, 333 (Iowa 1929) (distinguished in *Puntenney v. Iowa Utils. Bd.*, 928 N.W.2d 829, 839 (Iowa 2019) (finding the case moot because "[n]o order which we can now make can preserve to appellant his orchard" and stating "we are powerless to restore to [the plaintiff] the orchard").  The inability to have certain animals returned to them augers in favor of a finding of mootness.

But the Sellners also argue the visitors "are trying to interpret the consent decision as somehow barring [them] from owning" "farm animals (such as . . . sheep, goats, horses, cattle, rabbits and other animals—many of which were hauled away by" [them]).  An opinion in their favor may reaffirm their ownership interest in the livestock they possess even if it would not get the removed animals back.  *See Puntenney*, 928 N.W.2d at 840 (concluding that, although it was infeasible to dismantle a pipeline built across landowners' property, a challenge to the pipeline was not moot because the Iowa Utilities Board still had "authority to impose other 'terms, conditions and restrictions' to implement a ruling favorable to the [landowners]").  Relatedly, the Sellners' argument underscores a potential collateral consequence of the district court order—a cloud on their ownership interest in livestock and their livestock operation.  *See In re B.B.*, 826 N.W.2d 425, 429 (Iowa 2013) (citing collateral consequences of involuntary commitment order).

---

[4] Their request for stay of the district court decision was denied.
[5] The Sellners do not appear to contest the removal of "exotic" animals.

In short, reversal by this court could have more far-reaching consequences than the consent decision's directive to stop exhibiting wild and exotic animals. *See Baker v. City of Iowa City*, 750 N.W.2d 93, 98 (Iowa 2008) (concluding that while voluntary settlement of a discrimination complaint "may have eliminated the controversy that precipitated this lawsuit, that settlement clearly did not encompass [the] claim that" the plaintiff's civil rights were violated under 42 U.S.C. section 1983).

We conclude the consent decision does not render this appeal moot. Alternatively, we conclude the case is subject to the collateral consequences exception to the mootness doctrine. We proceed to the Sellners' arguments in favor of reversal.

## II.     Impermissible Private Cause of Action

The Sellners contend the district court allowed the visitors to pursue an unauthorized private cause of action under Iowa Code chapter 717B, titled "Injury to Animals Other than Livestock." They note the chapter only affords a "local authority power [to] take certain action[ ]," exempts livestock from its provisions, and "does not provide a private remedy." The visitors respond that the Sellners failed to preserve error on this issue. We agree with the visitors.

Iowa Court Rule 1.421(1)(f) states the defense of "[f]ailure to state a claim upon which any relief may be granted" may be raised by pre-answer motion. The Sellners raised the affirmative defense in their answer but did not file a dispositive motion seeking dismissal of the petition for failure to state a claim. They also did not brief or argue the issue before, during, or after trial. The district court pointed out these omissions in its order, stating:

> There were no motions filed by [the Sellners] to dismiss the action based on the assertion that the pleadings failed to state a claim upon which relief could be granted. There was no motion filed to object to standing of the [visitors]. There was no motion for directed verdict at the conclusion of the [visitors'] case or at the end of the presentation of evidence.

Because the affirmative defense was not presented to the court for a dispositive ruling, we have nothing to review. *See Martin v. Chemtech, Inc.*, No. 14-0230, 2015 WL 1332329, at *6 (Iowa Ct. App. Mar. 25, 2015) ("[T]he defendants pled affirmative defenses of failure to state a claim upon which relief may be granted and waiver. However, the defendants failed to argue these defenses in their post-trial briefing. In its . . . ruling, the district court explicitly found the failure to argue or brief the defenses constituted waiver of the defenses. The defendants did not file a rule 1.904 motion to amend or enlarge. Thus, we will not consider either claim on appeal." (internal footnote and citation omitted)); *see also Heartland Co-op Co. v. Murphy*, No. 15-0446, 2016 WL 5408302, at *5 (Iowa Ct. App. Sept. 28, 2016) (noting "[t]he vague and solitary invocation that the contracts were 'contrary to law' is not enough to preserve error on a claim for lack of consideration" and "the district court never ruled upon this affirmative defense" (citing *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002))).

### III. Challenge to Finding of Public Nuisance

Iowa recognizes common law nuisance theory to address environmental harms, as well as statutory nuisance claims under Iowa Code chapter 657. *See Freeman v. Grain Processing Corp.*, 848 N.W.2d 58, 66–67 (Iowa 2014). "[T]he statutory nuisance provisions of Iowa Code chapter 657 do not modify the common law of nuisance but supplement it." *Id.* at 67. "A party seeking to establish a

violation of the statutory regime does not need to demonstrate the presence of a nuisance. Conversely, . . . a party seeking to show a nuisance is not required to show a violation of some other law." *Id.* at 70 (citations omitted).

"The elements of [common law] public nuisance are: (1) unlawful or anti-social conduct that (2) in some way injures (3) a substantial number of people." *Pottawattamie Cnty. v. Iowa Dep't of Env't Quality*, 272 N.W.2d 448, 453 (Iowa 1978). As for statutory nuisance, Iowa Code section 657.1(1) provides: "Whatever is injurious to health, indecent, or unreasonably offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere unreasonably with the comfortable enjoyment of life or property, is a nuisance . . . ."

> There are public nuisances, and there are private nuisances. A public or common nuisance is a species of catchall criminal offenses, consisting of an interference with the rights of a community at large. . . . A private nuisance, on the other hand, is a civil wrong based on a disturbance of rights in land.

*Guzman v. Des Moines Hotel Partners, Ltd. P'ship.*, 489 N.W.2d 7, 10 (Iowa 1992). "The essence of a private nuisance is an interference with the use and enjoyment of land." *Id.*

The visitors alleged in their petition that the Sellners "fail[ed] to supply animals with necessary food, water, and veterinary care, and thereby cause[d] them unjustified pain, distress, and suffering."[6] They further alleged the conduct

---

[6] The supreme court has distinguished negligence from nuisance. *See Kellogg v. City of Albia*, 908 N.W.2d 822, 828 (Iowa 2018) ("Negligence is a type of liability-forming conduct, for example, a failure to act reasonably to prevent harm. In contrast, nuisance is a liability-producing condition." (quoting *Bormann v. Bd. of Supervisors,* 584 N.W.2d 309, 315 (Iowa 1998))). The court stated, "The distinction between nuisance and negligence claims is often important because common law nuisance generally exists as a separate area of recovery from negligence only when the danger at issue is inherent in the activity and not the

"violated Iowa's Animal Neglect Law," "injur[ed] a substantial number of people and [was] injurious to public health and morality," and was therefore "a public nuisance."

The district court concluded "[t]he zoo [was] a public nuisance as defined in the Iowa Code and pursuant to common law in that it [was] injurious to the health of the animals and potentially to the invitees due to the poor care and living conditions of the animals." The court added that "the zoo [was] unreasonably offensive to the senses in the inhumane manner of living of the animals."

The Sellners now contend the district court erred in determining their conduct constituted a nuisance because none of their "neighbors, local law enforcement, or any local authority alleged they were creating a nuisance." The visitors respond that we "should decline to address [their] implied standing argument because this issue was not preserved," the visitors "brought public—not private—nuisance claims," making "where they reside . . . irrelevant"; and, in any event, the Sellners "failed to preserve error regarding [the] alleged failure to satisfy a statutory requirement."

The Sellners' concession that the visitors alleged a public rather than a private nuisance essentially resolves their contention that only "neighbors, local law enforcement, or any local authority" could bring a nuisance claim. We turn to their assertion that the visitors omitted the land's legal description.

---

results of the negligent conduct." *Id.* at 829 (citing *Guzman*, 489 N.W.2d at 11). In *Guzman*, the court concluded the district court "erred in submitting the issue of nuisance as a separate theory" because "nuisance [was] merely a condition created by [the] defendant, if at all, through negligence." 489 N.W.2d at 11. The same could be said of the visitors' claim. But, this distinction was not raised or decided.

Iowa Code section 657.1 states:

> [A] civil action by ordinary proceedings may be brought to enjoin and abate the nuisance and to recover damages sustained on account of the nuisance. *A petition filed under this subsection shall include the legal description of the real property upon which the nuisance is located unless the nuisance* is not situated on or confined to a parcel of real property or *is portable or capable of being removed from the real property*.

(Emphasis added.) Noncompliance with this provision was not raised or decided in the district court. Accordingly, error was not preserved. But even if we were to reach the merits, we would find that section 657.1 does not require inclusion of a legal description if the nuisance "is . . . capable of being removed from the real property." That is precisely what the visitors requested. Under the particular circumstances of this case, we conclude the statute did not obligate the visitors to include a legal description of the land in their petition.

## IV.    *District Court's Role*

The Sellners argue the district court "did not act in a fair and impartial manner in deciding the case and instead acted as an advocate for the plaintiffs." They reference the district court's references to a site visit and opinions formed during the visit, as well as "questions that were framed in an adversarial manner." In their view, the court's conduct denied them a fair trial. They seek reversal and remand "to a different judge."

Iowa Rule of Civil Procedure 1.922 authorizes a court to permit a jury viewing of "any place where a material fact occurred." The district court in a nonjury trial also may "view these things . . . that being part of [the court's] inherent power to control [the] trial." Iowa R. Civ. P. 1.922 cmt.; *see also Hampton v. Burrell*, 17 N.W.2d 110, 117 (Iowa 1945). At the same time, a trial judge has "no right to

consider his [or her] observations at the scene as evidence nor to base the judgment thereon." *Hampton*, 17 N.W.2d at 117.

The parties agreed the district court could visit the zoo. The court availed itself of the opportunity. During trial, the judge commented on certain aspects of the site visit. For example, when a witness for the visitors stated, "That got me emotional," the judge responded, "Well, I just want to say for the record that I have shared every emotion today that you have talked about seeing that facility today. It was very difficult for me to go to lunch." The judge made several other comments along these lines. The Sellners moved for a mistrial and for recusal of the judge. The district court denied the motions. The judge conceded "memory" of the site visit could not be "erase[d]" but stated it was "never the case" that a party would be denied the opportunity to present evidence. The judge further stated "an open mind" was kept. The judge ended by stating, "I will not render a decision until every piece of evidence comes in and every expert testifies, and all of the facts are presented to the Court."

The court's references to the site visit give us pause. But the court ultimately allowed the defense to present its case and based the final order on the evidence. *See Huffman v. Hill*, 65 N.W.2d 205, 206 (Iowa 1954) (noting the district court "looked at [certain] improvements" in an action to foreclose a mechanic's lien and "[h]e had a right to do this, if he deemed it proper, to enable him to better understand and apply the testimony"); *Sojka v. Breck*, No. 12-1019, 2013 WL 1453241, at *6 (Iowa Ct. App. Apr. 10, 2013) (stating the court's conclusions were "strengthened by the judge's visit to the . . . properties," which "allowed the court more insight when comparing the witnesses' descriptions of various conditions and

bolstered his credibility findings"); *cf. Hyler v. Garner*, 548 N.W.2d 864, 869 (Iowa 1996) (affirming the district court's denial of party's request to have the court view the property, where "viewing the motor home would not necessarily have assisted the trial court in understanding the testimony"). In any event, because our review is de novo, we may "disregard any references where the district court appear[ed] to rely on its own observations as independent evidence." *See Sojka*, 2013 WL 1453241, at *6 n.3. We conclude the court's comments about the site visit did not deprive the defense of a fair trial.

We turn to the court's questioning of witnesses. A court may question witnesses, but must not "assum[e] the role of an advocate." *State v. Cuevas*, 288 N.W.2d 525, 532–33 (Iowa 1980); *see also State v. Thornburgh*, 220 N.W.2d 579, 585 (Iowa 1974) (same). The rule stems from the court's obligation to "act impartially and avoid conduct by which the jury could infer bias against either party." *Thornburgh*, 220 N.W.2d at 585.

The court questioned certain witnesses in what might be described as an advocacy style. But this was a bench trial and much of the concern associated with judicial questions lies in "its potential impact on a jury." *See State v. Simonich*, No. 16-1906, 2017 WL 5179004, at *9 (Iowa Ct. App. Nov. 8, 2017); *see also In re Marriage of Worthington*, 504 N.W.2d 147, 149 (Iowa Ct. App. 1993) ("A trial judge is allowed greater latitude to comment during a bench trial than might be acceptable during a jury trial." (citation omitted)); *State v. Curley*, No. 11-1318, 2012 WL 1247144, at *2 (Iowa Ct. App. Apr. 11, 2012) (noting no jury was present when the court raised questions during the defendant's sentencing hearing). With the greater leeway afforded district courts in bench trials and the court's ultimate

reliance on the duly-admitted evidence, we conclude the court's questioning did not deprive the Sellners of a fair trial. That said, "the better practice is for the trial judge to exercise restraint and avoid the fray as by questioning witnesses 'the court becomes vulnerable to a multiplicity of criticisms; bias, prejudice or advocacy.'" *State v. Benesh*, No.09-0951, 2010 WL 786039, at *5 (Iowa Ct. App. Mar. 10, 2010) (citing *Cuevas*, 288 N.W.2d at 533)).

## V.    *Sanctions*

The visitors sought to have their expert visit the zoo. When the Sellners refused, the visitors sought an order requiring their cooperation. The court ruled the visitors "should be entitled to view the zoo property." The court ordered the parties to work out the parameters of the visit. The visitors' expert subsequently went to the zoo during regular business hours, as a paying patron.

The Sellners moved for sanctions. They asserted they "were unaware of this inspection and the expert witness posed as a regular guest of the Animal Park." The district court denied the sanctions motion "since [the expert] went in as a paying member of the public, which is what the facility intends to offer to the community."

The Sellners seek reversal of the sanctions ruling on the ground the expert "was not a member of the public but a designated expert witness who was not supposed to appear at the Zoo without certain agreements between counsel about what the parameters of that visit were to be." Our review is for an abuse of discretion. *See Barnhill v. Iowa Dist. Ct.*, 765 N.W.2d 267, 272 (Iowa 2009).

The visitors' attorney stated that the district court order approving a visit was filed within a month of trial and the visitors "did everything . . . humanly possible to

accommodate the conditions for the formal inspection, which is what was authorized here, and conducted the informal public inspection of public areas only." In the absence of evidence establishing that the expert traversed private areas of the Sellners' property or exceeded the scope of a paying visitor's conduct, we conclude the district court did not abuse its discretion in denying the sanctions motion.

**AFFIRMED.**