J. Hines, Appellee, v. The City of Nevada, Appellant.

**Municipal corporations:** PUBLIC IMPROVEMENT: NUISANCE: LIABILITY.
1   Where a city itself aids in the construction and maintenance of a sewer it acts ministerially and is bound to the exercise of needful prudence and care. Thus where a city contributed to the expense of a sewer, assumed control and regulation thereof, expressly reserved the right to abate a nuisance if one should be produced in its use, it was liable for injury resulting to a property owner by the discharge of its contents in the immediate vicinity of his home, thus creating a nuisance.

**Same.**  The duty of a city to maintain and repair a sewer so that it
2   will not become a nuisance is a continuing one which it can not avoid or shift to a property owner, who may have abused the privilege afforded him of connecting with and using the same.

**Same.**  Nor did the fact that the outlet of the sewer was located
3   upon private property, as in this case, absolve the city from liability for the nuisance created at that point,

*Appeal from Story District Court.*—HON. R. M. WRIGHT, Judge.

FRIDAY, MARCH 10, 1911.

ACTION at law to recover damages for the maintenance of an alleged nuisance. Verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Bert B. Welty* and *A. A. McLaughlin,* for appellant.

*Fitchpatrick & McCall* and *U. S. Alderman,* for appellee.

WEAVER, J.—The plaintiff owns a lot in the defendant city, which he occupies and uses as a homestead. He alleges that for a considerable period the city has maintained a sewer passing through or adjacent to his said homestead which it has so negligently and improperly sustained as to discharge sewage and filth upon said premises, causing noisome and offensive odors to arise therefrom, and otherwise creating an unsanitary and dangerous condition, interfering with the safe and comfortable enjoyment of said homestead by the plaintiff and his family, and causing members of his family to become sick and suffer great discomfort, for all which he seeks a recovery of damages. The defendant denies the matters charged in the petition, and pleads the statute of limitations.

The evidence shows that the city of Nevada is located upon and across a narrow slough or waterway extending from the northeast to the southwest and opening into a stream known as Indian Creek near the west boundary of the plat. This depression furnishes the most feasible route for a course of drainage from the central business and resident section of the city, and prior to the laying of the sewer hereinafter mentioned it was used to a considerable

extent as an open drain with which other drains from the territory on either side connected. In the year 1899, upon the agreement of the county board of supervisors and certain citizens of the city to aid in the enterprise, the city by action of its council undertook the construction of a tile sewer along the line of said waterway between certain named streets connecting with or incorporating therein a sewer already existing across a block known as the Lockridge property emerging again into the open drain at the street near the northeast corner of the block on which plaintiff's residence was located. At that date the lot occupying the northeast part of said block and lying immediately east of plaintiff's lot was owned by the city and used as a public pound. Soon thereafter the city made a sale of the lot requiring the purchaser as part of the consideration therefor to extend the tile sewer from its then terminus in the direction of Indian Creek to a point at or near the southwest corner of said lot, and near the line of plaintiff's premises, and within ninety to one hundred feet of his house. After the sewer had been constructed, an ordinance was passed by the city council allowing property owners in the neighborhood to tap the pipe and connect therewith lateral sewers or drains from their several premises on payment to the city of certain specified charges and observing certain prescribed regulations. It was provided, however, that (to quote the language of the ordinance) "any lot owner making such connections shall in consideration of the privileges hereby granted and enjoyed hold the city harmless from any loss or damage that may in any way result from, or be occasioned by, said connection, and further, that they will not permit any improper materials, such as grease, rags, shavings, sweepings, kitchen slops, or filthy substance to be thrown into the inlets or openings, nor connect any privy vault therewith, and will at all times keep the inlets or openings properly protected with grating, catch basin, or stench traps so constructed

as to prevent effluvia or stench from escaping from sewer or drainage." In another section the city reserves to itself the right to abate any of these lateral or connecting drains on proof that the same had been improperly used, and further providing that the "main drain or sewer may at any time be abated or discontinued should the same become a nuisance."

From time to time owners of various lots within the area accommodated by the sewer constructed lateral sewers or drains, and connected them with the main. These drains were used not alone for carrying off mere surface water or rainfall, but were utilized for the discharge of liquid or fluid waste of all kinds. In many instances connections were made with water-closets and urinals, perhaps not directly with the vaults, but through the medium of cesspools which first received the deposits, and from which the liquid contents were conducted to the sewer. Among the premises served by this drainage was a hotel, a laundry, the county courthouse, and other places where considerable amounts of sewage and unclean waste, liquid and otherwise, originate. The water pouring from the mouth of the main tile had the effect to wash out a basin or hole in the earth of considerable width and depth, and the sewage held or detained by this excavation naturally tended to become foul and offensive. For some time after the sewer was first constructed there was no serious complaint from persons owning property at or near the outlet, but later, as the connections increased in number, the matter discharged through the sewer became more and more offensive. The plaintiff and others in his neighborhood complained of the conditions to officers of the city, and, no remedy being effected, this action was instituted. While there is some dispute as to the fact and extent of the stench and the actual character of the sewage discharged from the main pipe into the open drain, there was ample testimony from which the jury could find the sub-

stantial truth of the allegations of the petition. The verdict and judgment must therefore be sustained, unless we are required to hold that, conceding the injury of which plaintiff complains, there is yet no liability therefor on the part of the city, or that the record discloses reversible error in the court's rulings upon the introduction of evidence, or in its instructions to the jury.

I. The first and perhaps main contention of the appellant is as follows: The power of a city to abate a nuisance is governmental in character, and failure to exercise it, even though injury thereby results to the person or property of an individual, gives rise to no cause of action. Stating it from another angle, it is argued that the establishment and maintenance of sewers is a governmental function, and injuries arising from its exercise are not actionable, except where in exercising such power there is an actual invasion or taking of private property. Again, it is said that, if such liability ever exists, its basis is to be found in some statute, that we have no statute requiring a city to abate or remove nuisances except such as are found or are maintained in its streets, and, as the nuisance here complained of was not in a public street or on public grounds, the city is in no manner liable for damages thus occasioned. That, in the absence of a statute governing the case, a city is not chargeable with damages because of its failures or mistakes in the exercise of its purely governmental functions, may be admitted. It may also be admitted that a city's power to order or provide for the establishment, construction, and maintenance of public waterworks, public sewers, street paving, and other schemes of public improvements is governmental, and for its act or failure to act in the initiation of such an undertaking it is not answerable to the suit of any person. This principle is so well settled and well known that we need not pause to cite or discuss the authorities. But it

*[margin note:]* 1. MUNICIPAL CORPORATIONS: public improvement: nuisance: liability.

is no less well settled that municipal functions are not all governmental or legislative, but that in very many respects cities and towns act ministerially, and that in the discharge of such duties they are responsible within certain limits for the manner and method of the performance. The line of demarcation between these powers may sometimes be a narrow one, but it is not ordinarily indistinct. If, for instance, a city grants a franchise to a corporation or person for the establishment and maintenance of a system of waterworks, its act is clearly legislative or governmental, and generally, if not universally, speaking, it can not be held liable for the acts or omissions of the holders of the franchise in constructing or maintaining the works, or for its own failure to affix terms to the franchise properly guarding the interests of its citizens and property owners. If, however, instead of granting the franchise to another, the city undertakes itself to, build or construct or maintain such works, it assumes the performance of a ministerial function in which its failure to exercise reasonable skill and care makes it chargeable with negligence, and for injuries thus arising it is answerable. *Randolf v. Bloomfield*, 77 Iowa, 50; *Vogt v. Grinnell*, 123 Iowa, 332; *Vogt v. Grinnell*, 133 Iowa, 363; *Hollenbeck v. Marion*, 116 Iowa, 69; *Bennett v. Marion*, 119 Iowa, 473; *Loughran v. Des Moines*, 72 Iowa, 382; *Fitzgerald v. Sharon*, 143 Iowa, 730; *Ashley v. Port Huron*, 35 Mich. 296 (24 Am. Rep. 552); *Mayor v. Richardson*, 90 Miss. 1 (42 South. 234); *Jacksonville v. Lambert*, 62 Ill. 519. Discussing the same subject, the New York court has said: "The law is firmly established that in constructing sewers and keeping them in repair a municipal corporation acts ministerially, and, having authority to do the act, is bound to the exercise of needful prudence, watchfulness, and care." *Barton v. Syracuse*, 36 N. Y. 54. Other authorities to the same effect are very numerous. The rule is a salutary one, otherwise ownership and use of real prop-

erty within the corporate limits of a city or town would
hardly be an attractive proposition to an investor. As we
view the instant case, the principle pervading the deci-
sions we have cited is applicable. The city undertook to
exercise its undoubted authority in the construction of the
sewer. It assumed the control and regulation of the fin-
ished structure as it had a right to do. It reserved the
right (which indeed it had without express reservation)
to abate the nuisance if one should be produced in the use
of the drainage so afforded. It so constructed and main-
tained the sewer that it discharged its unclean contents
in the immediate vicinity of the plaintiff's home, creating
a nuisance to his injury, and there is no reason in law
or morals why it should not respond in damages. The city
has no more right to create a nuisance to the injury of an-
other than has the individual citizen, and, if it does so, it
is amenable to the remedies which the law provides for the
redress of such wrongs.

II.   But it is suggested, though it can hardly be urged
with any confidence, that this was not a city sewer, but a
sort of informal partnership affair to which the city con-
tributed a share, but did not assume municipal authority
or responsibility with respect to its care and maintenance.
The action of the city officers at the inception of the pro-
ject, the ordinance to which we have made reference, and
all the circumstances connected with the enterprise, forbid
any such conclusion.

III.   It is next said that, if the sewer became foul
and created a nuisance, it is chargeable to the individual
lot owners who made connections with it, and that their
conduct in this respect was in violation of
the ordinance, and the city should not be
held liable therefor. Here, again, we think the record
does not bear out the assumption. In the first place, the
ordinance is not so much a prohibition of the use of the
sewer for the purposes to which it was in fact subjected

2. SAME.

as it was to impose upon the lot owners the obligations to hold the city harmless against claims for damages so arising. Indeed, the careful reading of the testimony and observance of the practical construction put upon the ordinance from the outset are quite convincing that the use made of the sewer was not other or different than was in fact intended and expected. But, if it be true that some or all of the lot owners making connection with the sewer abused the privilege thus given them, we can not see how it affects the result of this case. The city would not thereby be relieved from its duty to see that the sewer it had constructed did not become a nuisance. The duty of its maintenance, of keeping it in repair, and in proper working order, and preventing its becoming a source of discomfort and injury to .others was a continuing one, a duty which it could not avoid by delegating it or shifting it to the shoulders of the lot owners.

Nor do we find merit in the thought that as the mouth of the tile opened upon private property, and as the connections with the main by private tiles were in part on

3. SAME. private property, the city could not abate the nuisance without trespassing upon private property, and it is therefore not liable for failing to do so. In the first place, there is neither claim nor proof that the city was a trespasser in constructing the sewer in part upon and across the lands of individual owners, and it will be presumed that ,the right to do so was in some manner properly obtained. The right to construct a sewer across the lands of another, being in the nature of an easement or perpetual license, carries with it the right to enter upon the premises to make such repairs, and do such work as is necessary to its proper maintenance. *Brown v. Stone,* 10 Gray (Mass.) 61 (69 Am. Dec. 303); *McMillan v. Cronin,* 75 N. Y. 474; *Thompson v. Uglow,* 4 Or. 369; *Clark v. Glidden,* 60 Vt. 702 (15 Atl. 358); *Wilson v. Chalfant,* 15 Ohio, 248 (45 Am. Dec. 574). In the next

place, the abatement of the nuisance did not necessarily involve the unauthorized entrance by the city upon the land of another. It might have acquired the right by condemnation or otherwise to extend the tile to some remoter terminus where it could injure no one, or avail itself of some of the more modern methods of disposing of the sewage without creating a nuisance, or it might have effectually abated the offensive conditions by exercising its undoubted power to forbid and prevent the use of the sewer except for purposes not giving just cause for complaint by the public or by owners of property exposed to injury therefrom. It is to be admitted that the problem of sanitary drainage is a serious one for all our inland cities and towns, but they should not be permitted to find relief for a part of their people and property owners by concentrating their sewage and casting it upon others or by creating a nuisance to the injury of others.

Exceptions were saved by appellant to certain rulings of the court upon the introduction of evidence and to the instructions given the jury. The points thus raised are in most instances covered and disposed of by the conclusions we have already announced, and in none of the other rulings do we find any reversible error. The trial appears to have been fairly conducted, the evidence is sufficient to justify a recovery by plaintiff, and the amount allowed is not so clearly excessive as to call for interference by this court.

The judgment of the district court is *affirmed*.