Dorothy M. HANSEN, Appellee,

v.

CITY OF AUDUBON, Iowa, Appellant.

No. 85–358.

Supreme Court of Iowa.

Dec. 18, 1985.

Allen K. Nepper of Franck, Mundt, Nepper & Franck, Denison, for appellant.

James M. Richardson of Barron & Richardson, Audubon, for appellee.

Considered by REYNOLDSON, C.J., and McCORMICK, McGIVERIN, LARSON and SCHULTZ, JJ.

SCHULTZ, Justice.

The issue in this case is whether the City of Audubon is statutorily excepted from liability for damages caused by sewage backing up into a homeowner's basement. The trial court awarded damages to the homeowner finding that the City's negligence in failing to maintain or repair its sanitary sewer system was the proximate cause of the damage. The City appealed and contends the trial court erred in not finding that it was excepted from liability under the Municipal Tort Claims Act, Iowa Code chapter 613A.

Dorothy M. Hansen, a homeowner in Audubon, experienced a major problem when sewage backed into the basement of her home. April 27, 1984, was the first she noticed that her basement floor was covered with water and sewage, which remained there until approximately May 4. She then spent the next two weeks sorting through her personal property in an attempt to salvage what she could.

On May 31, 1984, the homeowner filed the present action against the City of Audubon. She alleged that the sewage backup created a nuisance and that the City's negligence was the proximate cause of the damage to her property. The City generally denied the allegations made by the plaintiff.

In January 1985 the action was tried to the district court and the court addressed the issue of the City's negligence in its finding of fact. The trial court stated:

The cause of the sewage back up was the infiltration and inflow of storm waters into the sanitary sewer system. Inflow is the seeping of ground waters into the sanitary sewer lines. Infiltration is the flow of or depositing of surface storm waters into the sanitary sewer system. Neither infiltration nor inflow is intended or desired in a sanitary sewer system. The most common alternative to eliminating a backup in the sanitary sewer is to eliminate the extraneous storm waters from entering the sanitary system.

Plaintiff's claim is not predicated upon any theory of improper engineering or installation. Rather, she contends at trial, and the Court so finds, that Defendant failed to maintain or repair its sanitary sewer system after it became aware of the infiltration and inflow problem. In excess of nine (9) years, Defendant had actual knowledge of the infiltration and inflow problem in its sanitary sewer system. Yet it negligently failed to correct its problem.

The court concluded that the homeowner was free of any acts of negligence and that the City's negligence caused her damages.

■ In holding that the City was responsible for its negligence in maintaining its sewer system, the trial court's ruling is consistent with our case law. We recently summarized, and need not repeat, long-established principles which allow tort liability to be imposed upon municipalities that provide drains and sewers. *Scholbrock v. City of New Hampton*, 368 N.W.2d 195, 197 (Iowa 1985). When a city undertakes the performance of this ministerial function, it is chargeable for damages caused by its negligence in building, constructing, and maintaining such drains and sewers. *Hemminger v. City of Des Moines*, 199 Iowa 1302, 1305–06, 203 N.W. 822, 823–24

(1925); *Hines v. City of Nevada*, 150 Iowa 620, 625–26, 130 N.W. 181, 183–84 (1911); *Wallace v. City of Muscatine*, 4 Greene 373, 375 (Iowa 1854). The matter of maintaining such drains and sewers after their construction cannot be ignored. We stated in *Hines:* "The duty of its maintenance, of keeping it in repair, and in proper working order, and preventing its becoming a source of discomfort and injury to others was a continuing one, a duty which it [the city] could not avoid by delegating it or shifting it to the shoulders of the lot owners." 150 Iowa at 627, 130 N.W. at 184.

On appeal the City does not challenge the trial court's findings concerning negligence and proximate cause. The sole issue presented by the City is whether the trial court erred in failing to find that the City was excepted from liability pursuant to either Iowa Code section 613A.4(3) or 613A.4(8). Plaintiff urges that the City did not plead, nor did the trial court have before it, issues concerning the City's immunity from liability. The City disputes this assertion, however, but neither raised nor argued the issue of subject matter jurisdiction on this appeal. *But see Lloyd v. State*, 251 N.W.2d 551, 556–57 (Iowa 1977) (trial court had inherent affirmative duty to determine whether it had subject matter jurisdiction of the claims before it and it lacks subject matter jurisdiction when a claim comes within a statutory exception to *State* tort liability). Since we conclude that neither of the statutory exceptions advanced by the City is applicable under the facts of this case, we predicate our ruling on this basis. We reserve ruling upon issues concerning error preservation and the burden of pleading and proving statutory immunity of a municipality until we are presented a case in which these issues are more clearly advanced. As the subsections asserted by the City are not applicable, we conclude that the court had subject matter jurisdiction.

As previously indicated, certain tort liability has been imposed against municipalities under the common law. With the enactment of Iowa Code chapter 613A, there exists statutory authority for holding a municipality liable for its torts and those of its officers and employees. 1967 Iowa Acts ch. 405, § 2. Although this legislation generally abolished the doctrine of governmental immunity, certain exceptions were set forth at section 613A.4. 1967 Iowa Acts ch. 405, § 4. Subsequent amendments to section 613A.4 have extended additional exemptions or exceptions from liability to municipalities. 1982 Iowa Acts ch. 1018, § 4 (amendment to section 613A.4(3) granting municipality immunity while exercising or performing a "discretionary function"); 1983 Iowa Acts ch. 198, § 25 (present section 613A.4(8) exempting claims "for failure to upgrade, improve, or alter any aspect of an existing public improvement"). The applicability of these two latter enactments serves as the basis for the City's appeal.

I. *Discretionary function.* Section 613A.4(3) provides that a municipality is exempt from tort liability for any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty." This provision brings municipal tort liability into alignment with the State Tort Claims Act, Iowa Code chapter 25A, which has a similar "discretionary function" exemption. § 25A.14(1).

The City urges that its failure to repair and maintain the sanitary sewer system was a discretionary act and therefore it is excepted from liability. The City urges that there is no dispute that the sewer system was adequately designed when it was constructed and later modified. Additionally, the City concedes that in the 1970's it was apprised of infiltration and inflow problems with its sanitary sewer system. However, it asserts that nothing was done to alleviate these problems because an engineering study and federal criteria for a loan were never finalized. The City claims that it chose, rather, to fund other projects that it deemed had a higher priority than a new sanitary sewer system. The City then concludes that these decisions fall within the discretionary function exception. We do not agree.

■ We have previously addressed and interpreted the discretionary function exception under the State Tort Claims Act. *Butler v. State*, 336 N.W.2d 416, 419–20 (Iowa 1983); *Lloyd v. State*, 251 N.W.2d 551, 555–58 (Iowa 1977); *Stanley v. State*, 197 N.W.2d 599, 602–04 (Iowa 1972). In *Butler* we indicated that we adopt the planning-operational dichotomy set forth in *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), to determine whether a decision challenged under chapter 25A was discretionary. 336 N.W.2d at 419. We believe that the same test is also appropriate in construing section 613A.4(3).

In *Butler* we further defined planning and operational as follows:

The planning level is generally characterized as the policy making stage and is said to encompass decisions "that involve the formulation of policy, that call for a weighing of competing interests, that require an assessment of the practicability or feasibility (including the consideration of budgetary constraints) of a proposed course of action, or that entail an evaluation of how the public interest will best be served.

. The implementation of decisions made at the planning level is operational; decisions made at the operational level are not covered by the discretionary function exception.

336 N.W.2d at 419 (citations omitted). We went on to hold that the State's decision not to update previously installed guardrails was made at the operational, rather than the planning, level and did not meet the exception of a discretionary decision. *Id.* at 420.

■ The decision of the City not to maintain and repair its sanitary sewer system in order to prevent inflow and infiltration was an operational decision, and not an exercise of a discretionary function. We recognize that a decision whether to replace or not replace a sewer system is a long-range policy decision; however, the failure to re- pair or properly maintain a known defective sewer system over a period of nine years involves decisions at the operational level. Such conduct can be judged by standards of negligence. The City is not entitled to be excepted from liability on the basis that it was performing a "discretionary function" pursuant to section 613A.4(3).

II. *Failure to upgrade, improve or alter.* The City also argues that it is excepted from liability under section 613A.4(8). This section provides a liability exception from claims of negligent design or specification if the public facility was constructed in accordance with proper standards at the time of its construction. It additionally states: "A claim under this chapter shall not be allowed for failure to upgrade, improve, or alter any aspect of an existing public improvement or other public facility to new, changed, or altered design standards." § 613A.4(8). The City asserts that correcting the inflow and infiltration problems would require upgrading the sanitary sewer system as well as altering design standards. The City then argues that this is the very type of case that was intended to be covered by the 613A.4(8) exception. We do not agree.

The obvious purpose of section 613A.4(8) is to alleviate municipal responsibility for design or specification defects, as judged by present state of the art standards, when the original designs or specifications were proper at the time the public facility was constructed. Furthermore, a municipality is not responsible for its failure to upgrade or improve a public facility each time standards change. The terms "upgrade, improve, or alter ... to new, changed, or altered design standard" under section 613A.4(8) indicates a change in design or different design. However, as we indicated earlier, we still recognize tort actions against a municipality for its failure to repair and maintain its sanitary sewer system. "Repair" or "maintain," as opposed to "upgrade," denotes a restoration to for-

mer design standards to enable the existing facility to operate adequately.

The evidence presented at trial shows that the City's existing sanitary sewer system was in need of repair. An engineer had conducted smoke testing in the sewer lines. The results of that test disclosed there were numerous places where surface storm waters were infiltrating into the City's sanitary sewer lines. Additionally, the test revealed that groundwater was seeping, or inflowing, into cracks and breakages in the sanitary sewer and its manholes. The City made no attempt to correct these problems; rather, it placed its priority on a number of other projects. Additionally, it was discovered that some private property owners had connecting lines with the same infiltration problems and others had downspouts connecting directly into the sanitary sewer lines. However, the City did not require these property owners repair their lines or discontinue channeling storm waters into the City's sewer system. As a result, when there were heavy rains, as in this case, storm waters infiltrated and inflowed into the sanitary sewer system. The overburdened sewer lines caused sewage to back up into the homeowner's basement.

The homeowner's claim is not grounded on the City's negligence in failing to upgrade, improve, or alter its system, but rather is centered on the City's failure to repair, maintain, or operate its existing sanitary sewer system. Neither the literal terms nor purposes of section 613A.4(A)(8) apply to the City's negligence in this case.

In summary, we hold that the City is not statutorily excepted from liability under either Iowa Code section 613A.4(3) or 613A.4(8) and the court had subject matter jurisdiction of the homeowner's claim. The City's negligence in failing to maintain or repair its sanitary sewer system was the proximate cause of the homeowner's damage.

AFFIRMED.