# IN THE SUPREME COURT OF IOWA

No. 15–2143

Filed March 9, 2018

**WILMA JEAN KELLOGG,**

Appellant,

vs.

**CITY OF ALBIA, IOWA,**

Appellee.

_____

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Monroe County, Randy S. DeGeest, Judge.

The City of Albia seeks further review of a court of appeals decision that concluded it was not immune from a homeowner's nuisance suit and the statute of limitations did not bar recovery for claims related to flooding that occurred within two years of filing suit. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Zachary C. Priebe and Jeffrey S. Carter of Jeff Carter Law Offices, P.C., Des Moines, for appellant.

Sarah E. Crane and Michael C. Richards of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for appellee.

**CADY, Chief Justice.**

In this appeal, we must decide if a city is statutorily immune from a homeowner's nuisance claim stemming from reoccurring flooding in the basement of her home due to the discharge of rainwater from a storm sewer located near the home. The district court granted summary judgment for the City, and the court of appeals reversed the decision of the district court. On further review, we vacate the decision of the court of appeals and affirm the decision of the district court. The statute granting immunity to municipalities for tort claims based on claims of negligent design and construction of public improvements and facilities, or failure to upgrade public improvements and facilities, does not bar all claims for nuisance. It does, however, bar those nuisance claims based on conditions created by public improvements and facilities designed and constructed pursuant to generally recognized engineering or safety standards in existence at the time of construction and without evidence that the harmful condition creating the nuisance was inherent in the operation of the improvement or facility itself or evidence of negligent conduct other than the designated conduct immunized under statute.

## I. Factual Background and Proceedings.

In 1972, the City of Albia constructed a storm sewer system in an area of town as part of a comprehensive development plan. It installed a twelve-inch storm sewer pipe along 4th Avenue E, with intakes on the north and south curbs. The storm sewer intercepted the natural overland flow of water in the area and day-lighted on the north side of 4th Avenue E. The City sized the sewer system to accommodate a two-year recurrence interval storm. It designed and constructed the storm sewer system in accordance with the generally recognized engineering and safety standards of the early 1970s.

In 1983, a house was constructed on the parcel that contained the day-lighted storm sewer pipe. The house was positioned on the property so the exposed pipe was located in the front yard and pointed towards the home. In 2008, Wilma Kellogg purchased the home. At the time of the purchase, she was informed the basement had "flooded one time up the drain," but a sump pump had been installed to address the problem. Prior to closing, Kellogg paid for half of the cost of removing moldy drywall from the basement of the home.

Between 2009 and 2015, the basement flooded after rainfall on eight or nine occasions. During the flooding, Kellogg experienced water across the furnished portions of her basement, as well as near the hot water heater. Often, water leaked down the wall of the basement's crawl space. Mold began to appear on the drywall, and photographs of the basement show multiple mold growths near a wall electrical outlet. Photographs also demonstrated a ponding effect on Kellogg's lawn during heavy rainfall.

In 2010, frustrated by the repeated flooding, Kellogg contacted the City to request a remedy. Although the mayor and members of the city council met with Kellogg and assured her they would look into possible solutions, the City never followed up with Kellogg about the flooding. Kellogg subsequently contacted the City about the flooding in 2012, 2013, and 2014, but never received any assistance. While waiting for the City to take action, Kellogg's basement continued to flood following periods of heavy rainfall.

On February 25, 2015, Kellogg filed an action against the City in district court. She alleged the flooding constituted a nuisance and that the City was negligent in installing the storm sewer pipe. The City filed a motion for summary judgment. It asserted Kellogg's claims were barred

by the state-of-the-art immunity given to municipalities under Iowa Code section 670.4(1)(*h*) (2015) and the applicable two-year statute of limitations under section 670.5.

The district court granted the motion. It found the facts were undisputed that the storm sewer was built in accordance with the accepted and generally recognized engineering standards and criteria at the time of construction. Therefore, the state-of-the-art defense granted the City immunity from Kellogg's nuisance and negligence claims. Additionally, it concluded the statute of limitations also barred the lawsuit, finding that the period of limitations did not begin anew after each incident of flooding but began to run after the first incident of flooding in 2009.

Kellogg appealed. She claimed the immunity statute did not apply to her claim for nuisance, but only applied to claims based on negligence. She also claimed the statute-of-limitations period ran anew from each incident of flooding. Kellogg did not appeal from the dismissal of her claim based on negligence and did not contest the finding of undisputed facts made by the district court in ruling on the motion for summary judgment.

We transferred the case to the court of appeals. The court of appeals reversed the decision of the district court, concluding Kellogg established a genuine issue of material fact that a nuisance was created or was being maintained by the City's operation of the storm sewer, without regard to design or specification defects. The City applied for, and we granted, further review.

## II. Standard of Review.

We review a district court's ruling on a motion for summary judgment "for correction of errors at law." *Sanon v. City of Pella,* 865

N.W.2d 506, 510 (Iowa 2015) (quoting *Ne. Cmty. Sch. Dist. v. Easton Valley Cmty. Sch. Dist.*, 857 N.W.2d 488, 491 (Iowa 2014)). Summary judgment is proper when

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*Thomas v. Gavin*, 838 N.W.2d 518, 521 (Iowa 2013) (quoting Iowa R. Civ. P. 1.981(3)).

### III. Statutory Immunity.

We first address whether the City is immune from the nuisance claim brought by Kellogg. On appeal, Kellogg does not contest the finding by the district court that the storm sewer was built in accordance with the standards at the time, but claims the state-of-the-art immunity does not apply to her claim for nuisance.

### A. Municipal Tort Immunity Under Section 670.4(1)(*h*).

1. *The state-of-the-art defense.* In 1967, the legislature abrogated common law governmental tort immunity when it passed the Iowa Municipal Tort Claims Act. 1967 Iowa Acts ch. 405, § 2 (originally codified at Iowa Code § 613A.2 (1971), now § 670.2). Under the Act, "every municipality is subject to liability for its torts and those of its officers, employees, and agents." *Id.* The Act defined torts to mean all civil wrongs, including actions based on negligence and nuisance. *Id.* at § 1(3). However, the Act retained sovereign immunity for several enumerated tort claims, and additional enumerated claims were subsequently added. *See* Iowa Code § 670.4(1)(*a*)–(*o*) (2015).

In 1983, the legislature immunized municipalities from claims "based upon or arising out of a claim of negligent design or specification,

negligent adoption of design or specification, or negligent construction or reconstruction of a . . . public facility," so long as the facility "was constructed or reconstructed in accordance with a generally recognized engineering or safety standard, criteria, or design theory in existence at the time of the construction or reconstruction." 1983 Iowa Acts ch. 198, § 25 (codified at Iowa Code § 613A.4(8) (1985), now § 670.4(1)(*h*)). Further, the legislature excepted municipalities from tort claims for "failure to upgrade, improve, or alter any aspect of an existing public improvement or other public facility to new, changed, or altered design standards." *Id.* Thus, cities are immune under the statute from claims for the negligent design and construction of facilities built pursuant to the accepted standards in existence at the time and for claims based on the failure to upgrade facilities to new design standards.

The purpose of section 670.4(1)(*h*) immunity—often referred to as the state-of-the-art defense—is twofold. First, it "alleviate[s] municipal responsibility for design or specification defects, as judged by present state of the art standards, when the original designs or specifications were proper at the time the public facility was constructed." *Hansen v. City of Audubon,* 378 N.W.2d 903, 906 (Iowa 1985). Second, the statute instructs courts to measure a municipality's duty to avoid nonconstitutional torts "by the 'generally recognized engineering or safety standard, criteria, or design theory' in existence at the time of the construction or reconstruction." *Connolly v. Dallas County*, 465 N.W.2d 875, 877 (Iowa 1991).

Since the enactment of the statute, we have confined the state-of-the-art immunity to its limiting language and purpose. In *Hansen,* we clarified a municipality may still be held liable for its failure to repair, operate, or maintain a once-competently designed or constructed public

facility. 378 N.W.2d at 906–07. When a claim rests upon negligence in the maintenance of a utility, rather than negligence in the failure to upgrade a utility, "[n]either the literal terms nor the purposes" of the statutory immunity are applicable. *Id.* at 907.

2. *Application of statutory immunity to private nuisance claims.* Kellogg seeks to exclude nuisance claims from the state-of-the-art immunity statute. She argues the statute specifically limits the immunity defense to claims of negligence, which are distinct from claims of nuisance. The City argues the state-of-the-art immunity for claims of negligence cannot be sidestepped by designating the claim as one for nuisance. It asserts a nuisance claim arising out of flooding from a properly functioning storm sewer designed and constructed pursuant to the standards at the time of construction is still a claim "based upon or arising out of" a claim of negligent design, construction, or a failure to upgrade.

The Iowa Municipal Tort Claims Act expressly defines a tort to include a nuisance action. Iowa Code § 670.1(4) (" '*Tort*' means every civil wrong which results in wrongful death or injury to person or injury to property or injury to personal or property rights and includes but is not restricted to actions based upon negligence; error or omission; nuisance . . . ."). Moreover, a plain reading of the statute supports the conclusion that the state-of-the-art immunity defense extends to nuisance actions "based upon or arising out of" one of the enumerated negligence claims. *Id.* § 670.4(1)(*h*). The statute does not just immunize claims of negligent design, construction, or failure to upgrade. It also immunizes all claims based upon or arising out of claims for the failure to bring the facility up to today's standards. Thus, the question turns to whether the nuisance action brought by Kellogg in this case is a claim

that is based on or arising out of a claim of negligent design, construction, or failure to upgrade. The City's position does not end our analysis, but establishes the pathway to the resolution of the question presented.

We have discussed the meaning of the "based upon or arising out of" language of the statute in prior cases. In *Cubit v. Mahaska County*, we examined the scope of municipal emergency-response immunity—a parallel provision to state-of-the-art immunity. 677 N.W.2d 777, 782–84 (Iowa 2004). Akin to state-of the-art immunity, emergency-response immunity limits tort claims "based upon or arising out of" actions taken pursuant to an emergency response. *Id.* at 782. In that context, we interpreted "arising out of" to require "some causal connection between the 'claim' and 'an act or omission in connection with an emergency response.'" *Id.* at 784 (quoting Iowa Code § 670.4[*k*]). We held a claim of negligent supervision falls outside the statutory immunity under section 670.4(1)(*k*) only if it can "be proved without reference to or reliance upon the dispatchers' acts or omissions during the emergency." *Id.* We found one element of a claim of negligent supervision by an employer required a showing of negligent conduct of an employee. *Id.* at 785. Since the employee in the case was an emergency responder, the city was immune because the claim was necessarily based on or arose out of the actions of the emergency responder. *Id.*

Kellogg seizes on the distinction between nuisance claims based on negligence and those that are independent of negligence. She argues her nuisance claim is not grounded in any wrongdoing on the part of the City and does not otherwise rely on conduct within the immunity statute. Rather, Kellogg focuses only on the intermittent flooding that results from the storm sewer and contends it interferes with her interest in the

private use and enjoyment of her property. She argues this claim of pure nuisance does not rely on any negligence connected to the flooding and is therefore not within the claims protected by statutory immunity. Based on *Cubit*, she contends her pure nuisance claim can necessarily be proved without reference to or reliance on any negligent design, construction, or failure to upgrade.

Kellogg's position is built upon the unique position occupied by nuisance law within our tort system. In the past, we have observed "[t]here is perhaps no more impenetrable jungle in the entire law than that which surrounds the word 'nuisance.'" *Guzman v. Des Moines Hotel Partners, Ltd. P'ship*, 489 N.W.2d 7, 10 (Iowa 1992) (alteration in original) (quoting W. Page Keeton et al., *Prosser and Keaton on the Law of Torts* § 86, at 616–17 (5th ed. 1984)).

> Much of the vagueness and uncertainty surrounding the concept of nuisance is due to the fact that the word itself does not identify the *cause* of the problem but simply means the hurt, annoyance, or inconvenience that results from it.

*Id.*

Private nuisance is "an actionable interference with a person's interest in the private use and enjoyment of the person's land." *Freeman v. Grain Processing Corp.*, 895 N.W.2d 105, 120 (Iowa 2017) (quoting *Perkins v. Madison Cty. Livestock & Fair Ass'n*, 613 N.W.2d 264, 271 (Iowa 2000)). The legislature defines nuisance as "[w]hatever is injurious to health, indecent, or unreasonably offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere unreasonably with the comfortable enjoyment of life or property." Iowa Code § 657.1(1). The nuisance statute "does not supersede common law nuisance," but rather expands upon it. *Freeman*, 895 N.W.2d at 120.

Examples of private nuisances include "vibrations, blasting, destruction of crops, flooding, [and] pollution." *Guzman*, 489 N.W.2d at 10.

We have also previously discussed the distinction between negligence and nuisance:

> Negligence is a type of liability-forming conduct, for example, a failure to act reasonably to prevent harm. In contrast, nuisance is a liability-producing condition. Negligence may or may not accompany a nuisance; negligence, however, is not an essential element of nuisance. If the condition constituting the nuisance exists, the person responsible for it is liable for resulting damages to others even though the person acted reasonably to prevent or minimize the deleterious effect of the nuisance.

*Bormann v. Bd. of Supervisors*, 584 N.W.2d 309, 315 (Iowa 1998) (citations omitted). In other words, "nuisance simply refers to the results; negligence *might* be the cause." *Martins v. Interstate Power Co.*, 652 N.W.2d 657, 661 (Iowa 2002). However, pure nuisance claims—nuisance claims without any accompanying negligence—require demonstrating a "degree of danger (likely to result in damage) inherent in the thing [responsible for the harm], beyond that arising from mere failure to exercise ordinary care in its use." *Id.* at 665 (Cady, J., dissenting) (quoting *Guzman*, 489 N.W.2d at 11).

We adopted the inherent-danger standard from a Missouri Supreme Court case, *Pearson v. Kansas City*, 55 S.W.2d 485, 489 (Mo. 1932). *Hall v. Town of Keota*, 248 Iowa 131, 142, 79 N.W.2d 784, 790 (1956). The *Pearson* court instructed that a " 'nuisance' does not rest on the degree of care used, but on the degree of danger existing with the best of care." 55 S.W.2d at 489. Further, in order to be liable for creating a nuisance, a municipality

> must have violated the absolute duty of refraining from the participating acts, not merely the relative duty of exercising reasonable care, foresight, and prudence in their

> performance. The wrongfulness must have been in the acts themselves, rather than in the failure to use the requisite degree of care in doing them, and therein lies the distinction, under the facts of this case, between "nuisance" and "negligence." The one is a violation of an absolute duty; the other a failure to use the degree of care required in the particular circumstances—a violation of a relative duty.

*Id.* at 490 (quoting *Herman v. City of Buffalo*, 108 N.E. 451, 453 (N.Y. 1915)). The plaintiff in *Pearson* alleged that three conditions amounted to a nuisance that caused her injury: a worn elevator main shaft, a broken latch on the shaft door, and a failure to turn on lights in a hallway. *Id.* The court concluded the plaintiff's injuries were caused by a lack of due care under the circumstances, "not by an inherently dangerous condition which would cause damage regardless of the exercise of a reasonable degree of care." *Id.* at 491.

The distinction between nuisance and negligence claims is often important because common law nuisance generally exists as a separate area of recovery from negligence only when the danger at issue is inherent in the activity and not the results of the negligent conduct. *See Guzman*, 489 N.W.2d at 11. Thus, we have, on prior occasions, considered whether a claim for nuisance is actually one for negligence.

In *Martins*, the operators of a dairy farm sued an electric utility for injuries to their dairy cows due to the presence of stray voltage from electrical lines maintained by the utility. 652 N.W.2d at 658–59 (majority opinion). In addressing the claim based on nuisance, we explained "[t]he key for such a stand-alone claim of nuisance is that the degree of danger likely to result in damage must be *inherent* in the thing itself." *Id.* at 664. We surveyed the science behind stray voltage and how other jurisdictions have approached the issue. *Id.* at 661–64. We concluded the farmers satisfied the inherent-danger standard and could proceed on a pure nuisance claim against the utility because "[s]ome stray voltage

may always be present as an *inherent* part of supplying electricity." *Id.* at 662 (alteration in original) (quoting Peter G. Yelkovac, *Homogenizing the Law of Stray Voltage: An Electrifying Attempt to Corral the Controversy*, 28 Val. U.L. Rev. 1111, 1112–13 (1994)).

In *Hall*, a poorly maintained traffic pole fell on a young child, who died from his injuries. 248 Iowa at 134, 79 N.W.2d at 785. The child's father and the estate administrator sued the city, alleging, among other things, it created a nuisance by maintaining the pole in a defective and dangerous condition. *Id.* at 133–34; 79 N.W.2d at 785–86. We concluded the nuisance claim was no more than one for negligence and found it could not proceed as a separate claim from negligence. *Id.* at 142, 79 N.W.2d at 790.

Kellogg relies on this distinction by claiming she is only suing for a dangerous condition inherent in flooding, such as mold and the danger of mixing water with electricity. She claims this makes her case one for pure nuisance, not negligent design, construction, or failure to upgrade. Kellogg emphasizes this claim can proceed under *Cubit* without reference to or reliance on any evidence relating to negligence.

3. *Kellogg's nuisance claim.* The "based upon or arising out" test articulated in *Cubit* examines whether the claim could be established without using evidence of the immune conduct. The objective of the test is to make sure a municipality is not exposed to liability for conduct protected by the statutory immunity. In *Cubit*, the plaintiff's claim was barred because it could not be established without relying on evidence of immunized conduct. Yet, this critical inquiry is not necessarily controlled by the burden of proof in every case. As in *Cubit*, if the plaintiff can only establish the claim by evidence of immune conduct, the defendant need only raise the immunity statute as a defense. Yet, when

a plaintiff is not required to prove a claim by evidence of immune conduct, as Kellogg asserts in this case, the defendant can still support an immunity defense by offering evidence that the conduct responsible for the condition supporting the nuisance claim is in fact conduct immunized under the statute.

In this case, Kellogg was not required to prove the City was negligent to establish a claim for pure nuisance. Yet, she was required to prove the City engaged in conduct responsible for creating a nuisance. This proof required Kellogg to show the City was responsible for the sewer pipe. This was an undisputed fact in the summary judgment proceedings. At the same time, it was also an undisputed fact that the City installed the sewer pipe pursuant to design and construction standards in effect at the time. Additionally, Kellogg made no claim that the City engaged in conduct outside the framework of the immunity statute, such as a failure to properly maintain and repair the sewer pipe. Thus, unlike in *Cubit*, the defendant needed to establish evidence that conduct immunized under the statute was the conduct supporting the claim for nuisance. To establish the affirmative state-of-the-art defense in this case, the City offered uncontroverted evidence that Kellogg's nuisance claim was in fact based on the City's failure to upgrade the overburdened sewer pipe. In response, Kellogg failed to contest these facts. She failed to respond with evidence that the conduct of the City responsible for the alleged nuisance was the type of conduct not immunized by the statute.

This approach to determining whether a claim falls within the immunity under Iowa Code section 670.4(1)(*h*) is not only consistent with the purpose and scope of the statute, but consistent with our long-standing approach to distinguishing between claims of pure

nuisance and claims of negligence. To establish a claim of pure nuisance, the claimant must demonstrate a "degree of danger (likely to result in damage) inherent in the thing [responsible for the harm], beyond that arising from mere failure to exercise ordinary care in its use." *Martins*, 652 N.W.2d at 665 (Cady, J., dissenting) (quoting *Guzman*, 489 N.W.2d at 11). Thus, as with nuisance claims supported by negligent conduct beyond negligent design, construction, and failure to upgrade, a pure nuisance claim based on harm inherent in an activity falls outside the immunity statute.

Accordingly, Kellogg failed to respond to the City's summary judgment evidence that her claim is nothing more than a claim alleging a failure to upgrade the sewer pipe. Moreover, Kellogg cannot change the outcome by attempting to transform her claim into one of pure nuisance by limiting her recovery to the inherent dangers of a wet basement, such as mold. The inherent danger of a pure nuisance claim emanates from the activity engaged in by the defendant, not the activity's consequent irritants. *See id.* at 662–64 (majority opinion) (assessing the dangers inherent in supplying electricity, rather than inherent in injured cattle); *see also Hall*, 248 Iowa at 142, 79 N.W.2d at 790. Therefore, because Kellogg did not offer any evidence that the City's storm sewer system was inherently dangerous beyond the dangers associated with failing to upgrade the pipe to accommodate the increased water flow, or that the claim was otherwise based on conduct not given immunity, summary judgment on Kellogg's nuisance claim was properly granted by the district court.

**B. Statute of Limitations.** Because Kellogg's nuisance claim does not survive summary judgment, we need not reach the issue of whether Kellogg's claim was barred by the two-year statute of limitations.

**IV. Conclusion.**

Finding Kellogg did not introduce sufficient facts to survive summary judgment on her nuisance claim, we vacate the decision of the court of appeals and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except Wiggins and Hecht, JJ., who concur specially.

**WIGGINS, Justice (concurring specially).**

I concur in the majority opinion but write separately to stress what this case is not about. The only other argument besides the statute of limitations that Wilma Kellogg makes in response to the City of Albia's motion for summary judgment is that her nuisance claim is not subject to the immunity created by the state-of-the-art defense under Iowa Code section 670.4(1)(*h*) (2015). As the majority rightly points out, a nuisance claim is subject to the immunity created by the state-of-the-art defense if the nuisance is caused by an improvement "that was constructed or reconstructed in accordance with a generally recognized engineering or safety standard, criteria, or design theory in existence at the time of the construction or reconstruction." Iowa Code § 670.4(1)(*h*). The undisputed evidence presented during the summary judgment proceeding supports the majority's conclusion that the City constructed the sewer system in accordance with a generally recognized engineering standard.

This holding today does not mean a city will be immune from all nuisances caused by a sewer system constructed in accordance with a generally recognized engineering standard. For example, if a city took an existing sewer system constructed in accordance with a generally recognized engineering standard but later increases the load on the system beyond the original engineering standards by adding additional flow to the system, a city may be liable for failing to maintain the system to accommodate the increased flow. Kellogg did not present any evidence supporting such a claim in the summary judgment proceeding. Thus, I believe, based on the limited record, the majority opinion is correct.

Hecht, J. joins this special concurrence.