# IN THE SUPREME COURT OF IOWA

No. 22–0513

Submitted February 22, 2023—Filed May 19, 2023

**JIM SUTTON** and **ANGELA SUTTON,**

Appellees,

vs.

**COUNCIL BLUFFS WATER WORKS,**

Appellant.

Appeal from the Iowa District Court for Pottawattamie County, Greg W. Steensland, Judge.

A municipality appeals the denial of its motion to dismiss a strict-liability claim for structural and other damage to a house resulting from a water main break. **AFFIRMED.**

McDermott, J., delivered the opinion of the court, in which all participating justices joined. Christensen, C.J., took no part in the consideration or decision of the case.

Raymond E. Walden (argued), Michael T. Gibbons, and Christopher D. Jerram of Woodke & Gibbons, P.C., L.L.O., Omaha, Nebraska for appellant.

Nicholas F. Sullivan (argued) and Tiffany S. Boutcher of Dvorak Law Group, LLC, Omaha, Nebraska, for appellees.

**McDERMOTT, Justice.**

Jim and Angela Sutton's house in Council Bluffs sits near an intersection where an underground water main broke in November 2020, sending water flowing to the surface. The Suttons alerted Council Bluffs Water Works to the problem and, over the next eight weeks, crews inspected and repaired breaks to the pipe on five different occasions. The escaping water soon became standing water.

The Suttons allege that all the water caused their house to settle, resulting in damage to its foundation, interior walls, garage floors, and doors. They sued Water Works under two legal theories: count 1, strict liability; and count 2, negligence. Water Works moved to dismiss the strict liability claim, arguing that the Iowa Municipal Tort Claims Act, Iowa Code ch. 670 (2021), doesn't permit a strict liability claim against it. The district court denied the motion. We granted Water Works's application for interlocutory appeal. We must decide whether the Iowa Municipal Tort Claims Act allows a claim for strict liability—liability that doesn't depend on negligence or intent to do harm—against a municipality for damage caused by an underground water main break.

In *Lubin v. City of Iowa City*, we held that a municipality could be held liable under a theory of strict liability for damage resulting from an underground water main break. 131 N.W.2d 765, 770–72 (Iowa 1964). We imposed strict liability primarily because of the nature of the activity, explaining our reasoning this way:

> It is neither just nor reasonable that the city engaged in a proprietary activity can deliberately and intentionally plan to leave

a watermain underground beyond inspection and maintenance until a break occurs and escape liability. A city or corporation so operating knows that eventually a break will occur, water will escape and in all probability flow onto the premises of another with resulting damage. We do not ordinarily think of watermains as being extra-hazardous but when such a practice is followed, they become "inherently dangerous and likely to damage the neighbor's property" . . . . When the expected and inevitable occurs, they should bear the loss and not the unfortunate individual whose property is damaged without fault of his own.

*Id.* at 770 (citation omitted) (quoting *Pumphrey v. J.A. Jones Constr. Co.*, 94 N.W.2d 737, 738 (Iowa 1959)).

In 1967, three years after we decided *Lubin*, the legislature enacted the Iowa Municipal Tort Claims Act. 1967 Iowa Acts ch. 405 (originally codified at Iowa Code ch. 613A (1971), now codified as amended at Iowa Code ch. 670 (2021)). The Act "does not expand any existing cause of action or create any new cause of action against a municipality." Iowa Code § 670.4(3). But it allows people to assert claims against municipalities that otherwise would have been barred by governmental immunity. *Venckus v. City of Iowa City*, 930 N.W.2d 792, 809 (Iowa 2019). In establishing a municipality's scope of liability for the tortious conduct of its officers or employees, the Act states in part: "Except as otherwise provided in this chapter, every municipality is subject to liability for its torts and those of its officers and employees, acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function." Iowa Code § 670.2(1); *see also Thomas v. Gavin*, 838 N.W.2d 518, 521–22 (Iowa 2013).

Water Works's argument builds on a series of premises. Water Works first notes that the Act eliminated the right to pursue claims against municipalities that the Act itself doesn't authorize. *See Rucker v. Humboldt Cmty. Sch. Dist.*,

737 N.W.2d 292, 293 (Iowa 2007) (stating that the Act "is the exclusive remedy for torts against municipalities and their employees"). It then interprets the Act to prohibit claims based on strict liability, thus abolishing the strict liability cause of action that we recognized in *Lubin*. As a result, Water Works concludes that the district court erred in failing to dismiss the Suttons' strict liability claim.

We turn to the Act's language to test Water Works's premise that the Act abolished claims for strict liability. As quoted above, the Act makes municipalities liable for "torts." Iowa Code § 670.2(1). The Act defines "tort" as follows:

> "Tort" means every civil wrong which results in wrongful death or injury to person or injury to property or injury to personal or property rights and includes but is not restricted to actions based upon negligence; error or omission; nuisance; breach of duty, whether statutory or other duty or denial or impairment of any right under any constitutional provision, statute or rule of law.

*Id.* § 670.1(4).

Water Works argues that strict liability isn't listed in the definition of "tort" in the Act and thus isn't a type of claim that the Act allows. It points to the absence of strict liability in the definition's list of causes of action ("negligence," "error or omission," "nuisance," and so on) and concludes that this means the Act provides no cause of action for strict liability. Water Works seeks to bolster its interpretation by reciting the negative-implication canon, which says that the expression of one thing in a series excludes others that were not mentioned. *See Homan v. Branstad*, 887 N.W.2d 153, 166 (Iowa 2016). If strict liability claims are not permitted under the Act, Water Works argues, then we must dismiss count I.

But Water Works's argument can't overcome the plain meaning of the text. The definition of "tort" doesn't consist of a list of causes of action; the list is offered only as an illustration. We know we're being presented with a nonexclusive list of examples based on the words that precede the list: "includes but is not restricted to." Iowa Code § 670.1(4). The negative-implication canon doesn't apply because it "properly applies only when . . . the thing specified . . . can reasonably be thought to be an expression of *all* that shares in the grant or prohibition involved." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107 (2012) [hereinafter Scalia & Garner, *Reading Law*]. A list that by its terms is not exclusive cannot be an expression of *all* the types of claims granted. The absence of strict liability from the list thus doesn't compel the interpretation that Water Works advances.

The defining language at the beginning of the sentence—that *tort* "means every civil wrong which results in wrongful death or injury" to people, property, or property rights—further clashes with Water Works's interpretation. Iowa Code § 670.1(4). The term "civil wrong" isn't separately defined, but its common usage includes several concepts. It includes, for instance, an intentional act resulting in harm (an intentional tort), an act involving wrongful conduct that inadvertently results in harm (negligence), and an act resulting in harm for which, because of the hazards involved, the law imposes strict liability. *Tort*, *Black's Law Dictionary*, 1792 (11th ed. 2019) (describing "[t]ortious conduct"). The adjective *every* that precedes "every civil wrong" also suggests the broadest conception of the term—all species of civil wrongs that aren't exempted elsewhere

in the statute are included. Applying the plain language of the statute, strict liability claims are "torts" for which parties can pursue claims under the Act. *See generally* Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 20, at 229–73 (Am. L. Inst. 2010) (recognizing abnormally dangerous activities as torts frequently subject to strict liability).

Water Works makes a related argument that the list of examples, if not itself determinative, necessarily sheds light on the parameters of the Act's definition of "tort" and that the absence of strict liability from the list means that "tort" is limited to fault-related causes of action. In making this argument, Water Works recites the interpretive canon that associated words in a statute bear on one another's meaning. *See State v. Ross*, 941 N.W.2d 341, 348 (Iowa 2020); Scalia & Garner, *Reading Law* at 195.

But this argument doesn't work for two reasons. First, as already discussed, the defining language ("every civil wrong which results in wrongful death or injury") embraces strict liability claims, and the nonexclusive list of examples doesn't rewrite that defining language. Second, even if the list of examples could be read to alter the defining language, the Act's insertion of "nuisance" on the list suggests *inclusion*, rather than *exclusion*, of strict liability because strict liability commonly applies to nuisance claims. In *Martins v. Interstate Power Co.*, we said that a "survey of our nuisance cases makes clear that there can be a nuisance claim without an underlying actionable conduct, such as negligence," and "without a showing of intentional conduct"—in other words, nuisance based on strict liability. 652 N.W.2d 657, 664 (Iowa 2002).

Using the listed examples to shape the meaning of "tort" under the Act cuts *against* the interpretation Water Works urges.

Water Works further argues that strict liability is inconsistent with an exemption from liability in section 670.4(1)(*h*) of the Act, which bars

> [a]ny claim based upon or arising out of a claim of negligent design or specification, negligent adoption of design or specification, or negligent construction or reconstruction of a public improvement . . . or other public facility that was constructed or reconstructed in accordance with a generally recognized engineering or safety standard, criteria, or design theory in existence at the time of the construction or reconstruction. A claim under this chapter shall not be allowed for failure to upgrade, improve, or alter any aspect of an existing public improvement or other public facility to new, changed, or altered design standards.

Iowa Code § 670.4(1)(*h*). Water Works argues that paragraph (*h*), which was enacted in 1983, includes a carve-out for certain types of negligence that would not make sense if a municipality already faced broader liability based on strict liability. *See* 1983 Iowa Acts ch. 198, § 25 (originally codified at Iowa Code § 613A.4(8) (1985), now codified as amended at Iowa Code § 670.4(1)(*h*) (2021)).

Water Works's argument views too broadly the work that paragraph (*h*) actually performs. The two sentences that make up paragraph (*h*) have distinct features. The first sentence bars negligence claims—negligent design, negligent specification, negligent construction, and so on—if the "the original designs or specifications were proper at the time the public facility was constructed." *Kellogg v. City of Albia*, 908 N.W.2d 822, 826 (Iowa 2018) (quoting *Hansen v. City of Audubon*, 378 N.W.2d 903, 906 (Iowa 1985)). The second sentence is not limited to negligence and bars claims based on an alleged failure to upgrade

existing public facilities when a new-and-improved design standard emerges. Iowa Code § 670.4(1)(*h*).

Paragraph (*h*) thus grants municipalities a "state-of-the-art defense" to several *very specific* claims. These two sentences apply to "public improvement[s]" and "public facilit[ies]" *id.*, with a broader reach than the strict liability for underground water system malfunctions imposed in *Lubin*, 131 N.W.2d 765 at 770–72. Only the first sentence addresses negligence claims, and only for a specific type of negligence: those related to design, specification, and construction. The second sentence isn't limited only to negligence claims but provides a defense to a claim of failing to upgrade to an improved or changed design. We presume that the legislature knows the state of the law, including caselaw, when it enacts a statute. *Iowa Farm Bureau Fed'n v. Env't Prot. Comm'n*, 850 N.W.2d 403, 434 (Iowa 2014). If the legislature wished to expand the state-of-the-art defense to apply more particularly to strict liability claims such as the one recognized in *Lubin*, it could have. It didn't, and it isn't for us to read such an intention into the targeted state-of-the-art defense that paragraph (*h*) provides.

Neither part of the state-of-the-art defense in paragraph (*h*) applies here. The Suttons allege in count I that Water Works is strictly liable for the damage to their house based on the inherent danger associated with the underground water main. Count I alleges no negligence (in design, specification, construction, or otherwise) that would trigger the state-of-the-art defense in paragraph (*h*)'s first sentence. And the Suttons similarly make no allegation of any failure by

Water Works to upgrade, improve, or alter any part of the water distribution system to a new, changed, or altered design standard to trigger the defense in paragraph (*h*)'s second sentence.

Finally, Water Works argues that our opinion in *Kellogg v. City of Albia* should be read as having done away with strict liability claims under the Act and thus implicitly overruling *Lubin*. *Kellogg*, 908 N.W.2d at 826. In *Kellogg*, a homeowner sued the city not based on damage from a broken underground water pipe but because a properly functioning storm sewer became overburdened and caused flooding during heavy rains. *Id.* at 824–25. The city argued that the homeowner's nuisance claim was really just a claim for failing to upgrade the overburdened storm sewer system and was pleaded as nuisance to sidestep the state-of-the-art defense. *Id.* at 826. Persuaded by the city's argument, we held that the nuisance claim was barred by the state-of-the-art defense and affirmed summary judgment for the city. *Id.* at 830.

But *Kellogg* does not, as Water Works argues, signal our refusal to recognize strict liability under the Act against a municipality for damage caused by an underground water main break. *Kellogg* didn't involve a water main break. The homeowner in *Kellogg* alleged no claim of strict liability. Indeed, the term "strict liability" appears nowhere in the opinion. *See generally id.* It's unsurprising, then, that the opinion contains no discussion of *Lubin*. Stated simply, *Kellogg* addressed different facts and different claims, and it neither abrogates nor overrules our holding in *Lubin*. We note that the court of appeals, in a published opinion twelve years after the Iowa Municipal Tort Claims Act was

enacted, applied *Lubin* and affirmed strict liability against a municipality for damages based on a water main break. *See Iowa Power & Light Co. v. Bd. of Water Works Trs.*, 281 N.W.2d 827, 831 (Iowa Ct. App. 1979). In short, we find nothing in our caselaw, and nothing in chapter 670, that upends our holding in *Lubin*.

Water Works has failed to show that the Iowa Municipal Tort Claims Act bars the Suttons' claim for damages based on strict liability. We thus affirm the district court's denial of the motion to dismiss this claim.

**AFFIRMED.**

All justices concur except Christensen, C.J., who takes no part.